1  DAVID R. EBERHART (S.B. #195474)
   deberhart@omm.com
2  O'MELVENY & MYERS LLP
   Two Embarcadero Center
3  28th Floor
   San Francisco, California 94111-3823
4  Telephone:  +1 415 984 8700
   Facsimile:   +1 415 984 8701
5
   DAWN SESTITO (S.B. #214011)
6  dsestito@omm.com
   O'MELVENY & MYERS LLP
7  400 South Hope Street
   18th Floor
8  Los Angeles, California  90071-2899
   Telephone:  +1 213 430 6000
9  Facsimile:   +1 213 430 6407

10 Attorneys for Plaintiff
   TRADER JOE'S COMPANY
11
                **UNITED STATES DISTRICT COURT**
12
                **CENTRAL DISTRICT OF CALIFORNIA**
13

14 TRADER JOE'S COMPANY, a          Case No. 2:23-cv-8395
   California corporation,
15                                   **COMPLAINT FOR**
                Plaintiff,
16                                   1. **FEDERAL TRADEMARK**
        v.                              **INFRINGEMENT**
17                                      (15 U.S.C. §§ 1114-1118, 1125)
   JOEMART LTD D/B/A TRADER         2. **FEDERAL TRADEMARK**
18 JOE, a corporation of the British    **DILUTION** (15 U.S.C. § 1125(c))
   Virgin Islands; SOJ TRADING LTD  3. **VIOLATION OF ANTI-**
19 D/B/A JOEPEGS, a corporation of the  **CYBERSQUATTING**
   British Virgin Islands; CHENG        **CONSUMER PROTECTION**
20 CHIEH LIU, an individual; and DOES   **ACT**
   1-10,                                (15 U.S.C. § 1125(d))
21                                   4. **CALIFORNIA STATUTORY**
                Defendant.              **UNFAIR COMPETITION**
22                                      (Cal. Bus. & Prof. Code §§ 17200 *et.*
                                        *seq.*)
23                                   5. **COMMON LAW TRADEMARK**
                                        **INFRINGEMENT AND UNFAIR**
24                                      **COMPETITION**
                                     6. **COMMON LAW CONVERSION**
25                                   7. **DECLARATORY RELIEF**
                                        (28 U.S.C. § 2201)
26
                                     **JURY TRIAL DEMAND**
27

28

Plaintiff Trader Joe's Company ("Trader Joe's" or "Plaintiff") brings this Complaint against Joemart Ltd d/b/a Trader Joe; SOJ Trading Ltd d/b/a Joepegs; Cheng Chieh Liu; and Does 1-10 (collectively, "Defendants").

## INTRODUCTION

1.      Trader Joe's is the owner of several United States federal trademark registrations for the mark TRADER JOE'S for retail grocery services and for a range of food and beverage products and associated merchandise.  For more than 50 years, Trader Joe's has worked tirelessly to assure that the TRADER JOE'S mark is associated only with goods and services of the highest quality.  To achieve this mission, Trader Joe's maintains strict standards and tightly controls the sale of all products bearing the TRADER JOE'S mark.

2.      Defendants operate a cryptocurrency platform called "Trader Joe" and use the domain name traderjoexyz.com.  Defendants named the platform "after the supermarket"—none other than Trader Joe's—and developed a narrative around a fictionalized "Trader Joe" who sells his crops in the local marketplace, further evoking Trader Joe's business and brand.  An image of "Trader Joe" donning a red cap (the famed color of Trader Joe's logo, store motifs, and memorabilia) serves as the platform's avatar.

3.      When challenged by Trader Joe's, Defendants committed fraud to obscure that origin story and to prevail in international legal proceedings with Trader Joe's over the domain name, recognizing that the true story would doom their case and any plausible claim of right to use the traderjoexyz.com domain.

4.      Defendants also operate a mobile application called "Trader Joe," which is available on the Apple App Store to, at least, consumers in the United States.  That application provides users with another way to interact with Defendants' "Trader Joe" platform and consume their goods and services—again, all offered under the "Trader Joe" name as depicted in the image below.



5.     In addition to their flagship website and mobile application, Defendants operate an X (formerly known as Twitter) page under the name "Trader Joe" to publicize their platform.  The avatar of "Trader Joe" features prominently on the page, including an image of "Trader Joe" standing in front of a produce stand.  Marketplace imagery—specifically, food marketplace imagery—pervades the posts by Defendants, for example:



COMPLAINT
2:23-CV-8395

6.      Defendants likewise operate a YouTube page under the name "Trader Joe XYZ" to further publicize and promote their platform.  They also operate, or have operated, accounts under the name "Trader Joe" and/or "Trader Joe XYZ" on Reddit, Github, LinkedIn, Substack, CoinMarketCap, Telegram, and Discord.

7.      In addition to using the confusingly similar "Trader Joe" name, Defendants' website, X page, YouTube page, and other online profiles use Trader Joe's *exact* word mark—TRADER JOE'S—throughout.

8.      For example, the "Welcome to Trader Joe" page on Defendants' website includes the following uses of the exact TRADER JOE'S mark:

**Built on the Blockchain, Trader Joe runs on Smart Contracts**

Operating entirely on a decentralized network, Trader Joe's Exchange is accessible around the clock worldwide and is not restricted by any central authority. While using Trader Joe, users are in complete control of their funds. When a user wants to make a trade on Trader Joe, they use their wallet to send the desired amount of crypto to a smart contract on the exchange, which then facilitates the transaction.

**Trader Joe is on a global expansion mission**

Since launching on Avalanche, Trader Joe's Decentralized Exchange has facilitated over $88 billion in trading volume and enables thousands of daily active users to trade directly with one another. Deployment of Joe V2, Liquidity Book, to Arbitrum One is Trader Joe's next step towards innovating on the frontiers of DeFi at a global scale. Arbitrum, the leading Ethereum Layer-2 scaling solution, aims to reduce transaction fees and congestion from the Ethereum main blockchain (Layer-1).

Similarly, Defendants' platform advertises "Trader Joe's Community Program" including "Trader Joe's Community Circle," as shown below.



**Trader Joe's Community Program**

⊙ Join the Circle

Written by Trader Joe
Updated over a week ago

Trader Joe's Community Circle provides you with an opportunity to participate and engage to complete tasks to level up your Discord role and Community standing. In the Circle program you can unlock reward tracks and discover a new ways to participate in a Web3 Community.

9.      Other examples abound on Defendants' social media channels.  For instance, Defendants posted videos celebrating "Trader Joe's 1st Birthday" and "Trader Joe's 2nd Birthday" on their YouTube channel.

COMPLAINT
2:23-CV-8395

 

Defendants' posts on X likewise use the TRADER JOE'S mark, for example:



As do Defendants' Substack posts, such as those shown below.





COMPLAINT
2:23-CV-8395

10. Further still, Defendants are continuing to register misleading domain names that are confusingly similar to Trader Joe's famous marks. Beyond the domain name traderjoexyz.com, Defendants have also registered the domain names trader-joes.site and trader-joe.website.

11. Defendants' "Trader Joe" branding is designed to allow them to commercially profit from Trader Joe's famous mark and broader reputation by causing confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' website and services and by trading on Trader Joe's hard-earned goodwill and name recognition.

12. Defendants neither sought nor received Trader Joe's permission to name their platform after Trader Joe's. To the contrary, Trader Joe's sent Defendants cease-and-desist letters demanding that they stop using the "Trader Joe" name. Defendants failed to respond, let alone comply.

13. Well after Trader Joe's demanded that they stop, Defendants continued capitalizing on Trader Joe's name, goodwill, and brand recognition—built up through Trader Joe's investment across more than half a century—to peddle their own goods and services.

14. Defendants have engaged in acts of lawlessness globally under the "Trader Joe" name, and that behavior harms Trader Joe's reputation given Defendants' use of a virtually identical name. For example, Defendants, and/or those acting in concert with them, undertook a vandalism-based marketing campaign in Paris during Paris Blockchain Week—plastering "Trader Joe" branded material on public and private property around the city, as shown below.

// // //

// // //

COMPLAINT
2:23-CV-8395





15.     Defendants have demonstrated an utter disregard for Trader Joe's trademark and other rights, and the law writ large.  Defendants have registered their businesses offshore and maintain a policy by which they and their employees use aliases not only externally but also within the company.  Obscuring their identities both from outsiders and each other in day-to-day business dealings evidences an intent to avoid detection, subvert legal process, and operate free of legal consequence.

16.     Ultimately, Defendants engaged in fraud in order to hold onto their platform and domain name as long as they could—knowing full well they had no right to use the name "Trader Joe" for their business.

17.     After Defendants ignored Trader Joe's attempts to privately urge them to desist their unsanctioned use of Trader Joe's marks, Trader Joe's turned to international legal process to protect its mark.  On May 4, 2022, and as amended May 13, 2022, Trader Joe's filed a complaint with the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center to divest Defendants of

the domain name traderjoexyz.com.  Trader Joe's alleged that Defendants had no legitimate claim to the traderjoexyz.com domain, as it was confusingly similar to Trader Joe's own name and mark.  Trader Joe's filed its complaint against Defendant Cheng Chieh Liu, as registrant of the domain name traderjoexyz.com and co-founder of the "Trader Joe" platform.

18.    While the real origin of Defendants' use of the "Trader Joe" name is that they deliberately copied it from Trader Joe's grocery stores, revealing this fact would have laid bare their infringement of Trader Joe's mark.  So, to salvage their case, Defendants concocted a false story.  In the WIPO proceeding, Defendants obscured the true beginnings of the "Trader Joe" name and falsely claimed that the platform had been named for the co-founder's brother.

19.    On June 9, 2022, Defendant Cheng Chieh Liu filed a response to Trader Joe's WIPO complaint.  He asserted that the platform's "Trader Joe" name was not an "intentional misspelling of the TRADER JOE'S" mark.  He further represented to WIPO that, instead, the platform was "named for Respondent's brother, Joe Liu, who is an active member of the Trader Joe community."

20.    Those representations were false, and Defendants knew of their falsity.

21.    Defendants contrived that false narrative with the intention that WIPO would rely on it in rendering its decision and, in turn, decide the domain name dispute in their favor.

22.    Defendants' plan worked.  WIPO relied on Defendant Cheng Chieh Liu's representations, exactly as Defendants planned.  In its decision, WIPO accepted that "[t]he disputed domain name is not an intentional misspelling of TRADER JOE'S," and that "[t]he platform is also named for the Respondent's brother, Joe Liu, who is an active member of the 'Trader Joe' community."  Based on those representations—now known to be false—WIPO denied Trader Joe's complaint and accordingly allowed Defendants to continue to possess and use the traderjoexyz.com domain.

23.     Just weeks after Defendants prevailed in the WIPO proceeding, a co-founder of Defendants Joemart Ltd d/b/a Trader Joe and SOJ Trading Ltd d/b/a Joepegs, who operates under the alias "cryptofish," admitted in a Substack publication that Defendants had in fact named their new cryptocurrency platform "Trader Joe, after the supermarket," thus revealing that Defendants had misled WIPO to avoid an order prohibiting their further possession and use of the infringing domain.



24.     Defendants' continued use of the "Trader Joe" name, traderjoexyz.com domain, and other similar names and brands undermines Trader Joe's hard-earned reputation, unnecessarily confuses consumers, and infringes on Trader Joe's broader intellectual property and other rights.

25.     Defendants' intentional use of Trader Joe's mark shows that their infringement is deliberate and designed to benefit from Trader Joe's reputation and to cause confusion.  And Defendants' unscrupulous activities—undertaken in the name of "Trader Joe"—further degrade Trader Joe's wholesome and high-quality brand and reputation.

26.     In light of Defendants' continued violations of Trader Joe's intellectual property rights in the face of Trader Joe's repeated requests to stop, as well as the

1  potential for significant reputational harm as a result of that conduct, injunctive

2  relief is necessary to remedy the harm to Trader Joe's and prevent further

3  infringement of Trader Joe's rights.

4  **JURISDICTION AND VENUE**

5  27.  This Court has original jurisdiction over this action under the

6  trademark laws of the United States 15 U.S.C. §§ 1051 *et seq*. and 28 U.S.C.

7  § 1331.  This Court has supplemental jurisdiction over Trader Joe's related claims

8  for relief under state laws pursuant to 28 U.S.C. § 1367(a).

9  28.  Venue in this District is proper under 28 U.S.C. § 1391 because a

10  substantial part of the events giving rise to the claims occurred in this District and a

11  substantial part of the property that is the subject of this action is situated in this

12  District, due to Trader Joe's headquarters in this District and the impact on Trader

13  Joe's trademark rights in this District.  In the alternative, venue in this District is

14  proper under 28 U.S.C. § 1391 because Defendants are subject to personal

15  jurisdiction in this District.

16  **PARTIES**

17  29.  Plaintiff Trader Joe's Company is a corporation organized under the

18  laws of the state of California with its principal place of business at 800 S.

19  Shamrock Avenue, Monrovia, California 91016.

20  30.  Defendant Joemart Ltd d/b/a Trader Joe is a company incorporated in

21  the British Virgin Islands.  According to the Trader Joe LinkedIn page, the

22  company's headquarters are located in New York, NY.  On information and belief,

23  Joemart Ltd has employed and/or continues to employ persons worldwide,

24  including in the United States.  On information and belief, Joemart Ltd has offered

25  and/or continues to offer its goods and/or services worldwide, including in the

26  United States.

27  31.  Defendant SOJ Trading Ltd d/b/a Joepegs is a company incorporated

28  in the British Virgin Islands.  On information and belief, SOJ Trading Ltd has

- 10 -

employed and/or continues to employ persons worldwide, including in the United States.  On information and belief, SOJ Trading Ltd has offered and/or continues to offer its goods and/or services worldwide, including in the United States.

32.     On information and belief, Defendant Cheng Chieh Liu is a Chinese national residing in Singapore.  He is a co-founder of the "Trader Joe" platform and registrant of the disputed domain name traderjoexyz.com.

33.     Trader Joe's is not currently aware of the true names of the defendants sued herein as Does 1-10, but will amend its complaint to substitute their true identities as they become known.

34.     On information and belief, at all relevant times, Defendants, and each of them, were the agents, principals, partners, associates, joint venturers, employees, and/or co-conspirators of each of the remaining co-defendants; Defendants, and each of them, were at all times acting within the course, purpose, and scope of said agency, partnership, association, joint venture employment, and/or conspiracy; and Defendants, and each of them, were acting with the authorization, permission, and/or consent of the remaining co-defendants.

## FACTUAL BACKGROUND

### The Trader Joe's Story

35.     Trader Joe's is a national chain of neighborhood grocery stores that has become famous for its unique shopping experience and exciting, yet affordable product selection.  Since 1967, Trader Joe's stores have stocked Trader Joe's-branded products that feature globally inspired flavors, high quality, and excellent value, and that are not available anywhere else.  Trader Joe's Crew Members are knowledgeable and friendly.  The stores encourage face-to-face interaction; self-check-out is not available, nor is "click-and-collect" curbside service.  The staff of knowledgeable, friendly Crew Members and the frequently updated product selection transform grocery shopping from a chore into an exciting experience full of new discoveries each visit.

36.     Although it is a national chain, Trader Joe's maintains a neighborhood feel by ensuring its stores' structure, design, and Crew Members uniquely reflect their locations and by donating hundreds of millions of dollars of food products to its communities each year.

37.     Trader Joe's promotes its products through carefully curated channels. It produces a newsletter, "The Fearless Flyer," which is distributed at Trader Joe's stores and emailed to more than 700,000 customers throughout the United States. Trader Joe's also advertises on its podcast, various social media platforms, and on its website, www.traderjoes.com.  The Trader Joe's website receives over 3.4 million visitors monthly even though customers cannot place orders there, which is a testament to the popularity of its brand.  The website offers information about Trader Joe's products, stores, and its commitment to the community.

38.     Trader Joe's does not have price-reduction sales events, it does not offer coupons, and it does not provide loyalty programs or membership cards for its customers.  Nor does Trader Joe's conduct extensive marketing and advertising campaigns for its products in the way that manufacturers of branded food products do.  Instead, Trader Joe's relies heavily on the quality of its products and shopping experience to create loyal customers, who in turn promote its products via word-of-mouth.  Trader Joe's can rely on word of mouth because it has worked tirelessly and methodically to ensure that its customers closely associate Trader Joe's and its TRADER JOE'S marks with both innovative, high-quality products at the best prices and with the rewarding, eventful, and fun shopping experience inside Trader Joe's stores.

39.     The Trader Joe's ethos and customer-centered experience has helped Trader Joe's expand from just a handful of stores in Southern California to over 540 neighborhood grocery stores in forty-two states and the District of Columbia. Critical to Trader Joe's success is its carefully cultivated reputation and attention to the details of each product it sells.

1

**Trader Joe's Intellectual Property Rights**

2          40.     For more than fifty years, Trader Joe's has offered grocery services

3    under the mark TRADER JOE'S at its retail grocery stores.  Each Trader Joe's

4    grocery store is owned and operated by Trader Joe's; Trader Joe's does not

5    franchise or license the mark TRADER JOE'S to others to use to offer retail

6    grocery services in the United States.  Trader Joe's does not permit the sale of

7    Trader Joe's products outside of Trader Joe's stores, whether in another retail

8    establishment or online, nor does it permit the use of any of its marks on any goods

9    other than those sold by Trader Joe's.

10          41.     The United States Patent and Trademark Office ("USPTO") has

11   granted Trader Joe's numerous trademark registrations for the mark TRADER

12   JOE'S, as summarized in the following chart (collectively, the "TRADER JOE'S

13   Family of Marks"):

14

| Mark | Serial No. | Reg. No. | Goods and Services |
|------|-----------|----------|---------------------|
| TRADER JOE'S | 73/597,966 Filed May 12, 1986 | 1,424,176 Registered Jan. 06, 1987 | Class 30: COFFEE, COFFEE BEANS, TEA, HONEY, CHOCOLATE, FLOUR, [ WHEAT BRAN, ] PASTRY AND MOLASSES |
| TRADER JOE'S | 73/598,028 Filed May 12, 1986 | 1,422,216 Registered Dec. 23, 1986 | Class 32: FRUIT JUICES, VEGETABLE JUICES [ AND PAPAYA NECTAR ] |
| TRADER JOE'S | 73/598,027 Filed May 12, 1986 | 1,421,310 Registered Dec. 16, 1986 | Class 29: [ SAFFLOWER OIL, ] DILL PICKLES, PINEAPPLE CHUNKS, FROZEN AND CANNED FISH, CHILI, BEEF SAUSAGE IN STICK FORM, SOUPS, CHOCOLATE MILK, PEANUT BUTTER AND POTATO CHIPS |
| TRADER JOE'S | 73/598,029 Filed May 12, 1986 | 1,420,628 Registered Dec. 09, 1986 | Class 42: SPECIALTY GROCERY STORE SERVICES |
| TRADER JOE'S | 73/598,030 | 1,421,383 Registered | Class 33: WINES, VODKA AND GIN |

| Mark | Serial No. | Reg. No. | Goods and Services |
|---|---|---|---|
| | Filed May 12, 1986 | Dec. 16, 1986 | |
| TRADER JOE'S | 73/599,166 Filed May 16, 1986 | 1,421,358 Registered Dec. 16, 1986 | Class 31: RAW NUTS, CAT FOOD AND DOG FOOD |
| TRADER JOE'S & Design | 75/285,794 Filed May 03, 1997 | 2,171,157 Registered Jul. 07, 1998 | Class 42: retail store services in the field of specialty foods and beverages |
| TRADER JOE'S | 75/299,807 Filed May 28, 1997 | 2,160,601 Registered May 26, 1998 | Class 29: processed fruits, canned fruits, bottled fruits, dried fruits, preserved fruits frozen fruits, fruit chips, fruit paste, [ fruit pectin, fruit peels, fruit pulps, ] fruit rinds, fruit salads, fruit sauces, fruit topping, fruit-based snack food, fruit preserves and conserves, [ fruit-based filings for cakes and pies, ] fruit-based spreads, cut or sliced fresh fruits, applesauce, processed apples, processed apricots, banana chips, processed blueberries, processed cherries, [ maraschino cherries, processed lemons, processed oranges, processed peaches, processed peels, ] raisins, cranberry sauce, crystallized fruit, jams, jellies, lemon curd, marmalade, processed dates, processed artichokes, processed asparagus, processed avocados, processed beans, baked beans, dried beans, processed beets, processed olives, processed mushrooms, processed onions, processed peppers, processed pimientos, processed potatoes, processed tomatoes, canned soybeans, potato chips, yucca chips, cole slaw, dried soybeans, french fried potatoes, gherkins, guacamole, instant potatoes, lentils, [ onion rings, ] pickled vegetables, pickles, potato crisps, potato pancakes, [ preserved truffles, ] processed corn, salads (except macaroni, rice and pasta salad), sauerkraut, vegetable salads, processed |

| Mark | Serial No. | Reg. No. | Goods and Services |
|------|-----------|----------|--------------------|
| | | | vegetables, tomato paste, tomato puree, textured vegetable protein for use as a meat extender, tofu, processed pumpkin seeds, processed almonds, processed coconut, edible oils, peanut butter, nut butter, butter, butter substitutes, [ chocolate nut butter, ] cooking oil, processed edible seeds, [ rennet, ] candied fruit and candied fruit snacks and candied nuts, salad oil, processed nuts, tahini, vegetable oil, processed anchovies, processed clams, caviar, bacon, beef, corned beef, roast beef, bologna, chicken, [ chicken and dumplings, ] seafood, soups, bouillon, soup broth, soup mixes, chowder, clam juice, chili, chop suey, chow mein, [ processed crayfish, vegetable croquettes, ] fish, fish and chips, fish fillets, ham, hamburger meat, hot dogs, jerky, [ liver paste, ] luncheon meats, meat, meat substitutes, pate, pork, pork rinds, poultry, poultry substitutes, processed prawns, processed lamb, salami, salmon, mayonnaise-based sandwich spread, sardines, sausages, shellfish, processed shrimp, smoked salmon, lox, tunafish, turkey, veal, cream cheese, cheese, cheese spreads, cheese substitutes, cheese and cracker combinations, milk, half and half milk and cream mixture, non-dairy creamer, acidophilus milk, chocolate milk, cream, whey-based food beverages, soy-based food beverages used as a milk substitute, dairy-based food beverages, dairy-based chocolate food beverages, vegetable-based food beverages, vegetable-based chocolate food beverages, cottage cheese, dairy products (excluding ice cream, ice milk and frozen yogurt), dairy-based dips, dips (excluding salsa and other sauces used as dips), egg nog, egg substitute, eggs, margarine, margarine substitutes, sour cream substitutes, sour |

| Mark | Serial No. | Reg. No. | Goods and Services |
|------|-----------|----------|-------------------|
| | | | cream, whipping cream and yogurt, processed garlic |
| TRADER JOE'S | 75/299,808 Filed May 28, 1997 | 2,156,879 Registered May 12, 1998 | Class 30: artichoke sauce, bagels, bakery goods, baking powder, baking soda, barbecue sauce, biscuits, bran, bread, bread rolls, bread sticks, breakfast cereals, brioches, buns, burritos, cake mixes, cakes, candy, candy cake decorations, candy coated popcorn, candy mints, capers, caramel popcorn, caramels, cereal-based snack food, [ chalupas, ] cheese flavored puffed corn snacks, cheese sauce, cheesecake, chili powders, chili sauce, chocolate, chocolate chips, chocolate covered nuts, chocolate fondue, chocolate food beverages not being dairy-based or vegetable-based, chocolate powder, chocolate syrup, chocolate topping, chocolate truffles, chocolate-based filings for cakes and pies, chow mein noodles, chutney, cinnamon, cloves, cocoa, cocoa mixes, coffee, cones for ice cream, confectionery chips for baking, cookies, corn chips, corn curls, corn flakes, corn meal, corn syrup, couscous, cracker and cheese combinations, crackers, crepes, crumpets, crystallized ginger, curry, custard-based filings for cakes and pies, custards, danish pastries, dessert souffles, doughnuts, dried chili peppers, dumplings, eclairs, egg rolls, empanadas, enchiladas, fajitas, farina, flavored ices, flavoring syrup, flour, flour-based chips, food starch, frozen confections, frozen custards, frozen entrees consisting primarily of pasta or rice, frozen yogurt, fruit ice, fruit pies, gingerbread, glazed popcorn, gnocchi, grain or chicory based coffee substitutes, grain-based chips, grain-based food beverages, granola, granola-based snack bars, halvah, ham glaze, herb tea, herbal food beverages, honey, horseradish, hot chocolate, |

| Mark | Serial No. | Reg. No. | Goods and Services |
|------|-----------|----------|--------------------|
| | | | hot sauce, ice cream substitute, ice cream, kasha, ketchup, lasagna, licorice, macaroni, macaroni and cheese, macaroni salad, maple syrup, marinades, mayonnaise, meat pies, minced garlic, mincemeat pies, mixes for making bakery goods, molasses, muffins, mustard, non-medicated lozenges, noodles, nutmeg, oatmeal, pancake mixes, pancake syrup, pancakes, parfaits, pasta, pasta salad, pasta shells, pastries, peanut butter confectionery chips, pepper, pickle relish, pies, pizza, pizza sauce, popped popcorn, pot pies, powdered garlic, powdered ginger, preserved ginger, pretzels, processed cereals, processed grains, processed oats, processed popcorn, puddings, puffed corn snacks, quiche, ravioli, ready-to-eat cereal derived food bars, relish, rice, rice salad, rice-based snack foods, rolled oats, rusks, salad dressings, salsa, salt, sandwiches, sauces, seasonings, sherbet, snack mix consisting primarily of crackers and/or pretzels and/or candied nuts and/or popped popcorn, sorbet, soy sauce, soy-based ice cream substitute, spaghetti, spaghetti and meatballs, spaghetti sauce, spices, sugar, taco chips, taco shells, tamales, tartar sauce, tea, tea-based beverages with fruit flavoring, tomato sauce, tortilla chips, tortillas, vanilla, vinegar, wafers, waffles and wheat-based snack foods |
| TRADER JOE'S | 75/299,824 Filed May 28, 1997 | 2,158,990 Registered May 19, 1998 | Class 32: ale, beer, [ nonalcoholic malt beverage, non-alcoholic punch, ] non-alcoholic cocktail mixes, carbonated and non-carbonated soft drinks, colas, ginger ale, ginger beer, fruit flavored soft drinks, soft drinks flavored with tea, fruit juices, fruit juice concentrates, aerated fruit juices, fruit drinks, fruit nectars, [ fruit punch, ] sweet cider, lemonade, [ syrup for making lemonade, ] syrups and essences for use in |

| Mark | Serial No. | Reg. No. | Goods and Services |
|------|-----------|----------|-------------------|
| | | | making soft drinks, tomato juice, vegetable juices, aloe vera juice, sports drinks, mineral water, [ seltzer water, ] soda water, spring water, aerated water, drinking water, [ lithia water, ] mineral water, quinine water and table water |
| TRADER JOE'S | 85/146,590 Filed Oct. 06, 2010 | 4,001,531 Registered Jul. 26, 2011 | Class 35: Retail grocery services |
| TRADER JOE'S & Design | 85/146,783 Filed Oct. 06, 2010 | 4,001,533 Registered Jul. 26, 2011 | Class 35: Retail grocery services |
| TRADER JOE'S & Design | 87/151,808 Filed Aug. 26, 2016 | 5,221,626 Registered Jun. 13, 2017 | Class 16: General purpose paper and plastic bags, merchandise bags, grocery bags for use in food wrapping and packaging<br><br>Class 18: Food carrying bags, namely, reusable bags made from cloth or other textiles to carry products from grocery stores; All-purpose reusable carrying bags<br><br>Class 35: Retail grocery services |
| TRADER JOE'S | 87/922,408 Filed May 15, 2018 | 5,927,576 Registered Dec. 03, 2019 | Class 33: Distilled blue agave liquor |

42.    Each of these registrations is valid, subsisting, and incontestable (with the sole exception of Reg. No. 5,927,576) pursuant to 15 U.S.C. § 1065.

43.    Trader Joe's also owns substantial common law trademark rights covering use of the famous mark TRADER JOE'S in several contexts.

44.    As a result of Trader Joe's tremendous success, the TRADER JOE'S Family of Marks have come to symbolize extraordinary goodwill and have achieved great fame both within and outside the United States.

45.     The fame and popularity of the TRADER JOE'S Family of Marks have generated very strong customer demand for other TRADER JOE'S-branded products and services and immediate brand recognition of the TRADER JOE'S trademarks and Trader Joe's.

**The Unauthorized "Trader Joe" Platform And Unlawful Activities**

46.     Defendants have purposefully advertised, marketed, promoted, offered for sale, sold, and continue to advertise, market, promote, offer for sale, and sell goods and services that violate Trader Joe's intellectual property rights.

47.     Defendants operate the cryptocurrency platform called "Trader Joe" (the "Platform") using the domain name traderjoexyz.com.  They named the Platform "after the supermarket," *i.e.*, Trader Joe's, and did so without authorization.

48.     Defendants also operate a mobile application called "Trader Joe" (the "App") which is available on the Apple App Store.  The App provides users with another way to interact with the Platform.

49.     Defendants offer and advertise their goods and services under the name "Trader Joe" on their website, the App, and various ancillary online platforms, such as X (formerly Twitter), YouTube, and Reddit.

50.     The "Trader Joe" name used by Defendants is confusingly similar to the TRADER JOE'S trademarks—and in fact, Defendants repeatedly use Trader Joe's *exact* word mark to offer and advertise their goods and services on their website and ancillary platforms.

51.     Defendants also employ food marketplace imagery and a red color scheme in connection with their commercial Platform to further evoke Trader Joe's business and brand.

52.     Defendants neither sought nor received Trader Joe's permission to name the Platform after Trader Joe's or to use the confusingly similar name "Trader Joe."

53.    As a result of Defendants' activities, there is a likelihood that consumers will be confused that Trader Joe's is associated or affiliated with Trader Joe, or that Trader Joe's sponsored, approved, or licensed Defendants' use of its name or the substantially similar "Trader Joe" name.

54.    Defendants' repeated use of the "Trader Joe" name in connection with their Platform also impairs the distinctiveness of the TRADER JOE'S Family of Marks and thereby causes dilution by blurring.  Further, Defendants' unscrupulous activities cause dilution by tarnishment of the TRADER JOE'S Family of Marks.

55.    Defendants' use of the confusingly similar "Trader Joe" name and infringement of Trader Joe's trademarks has been intentional, willful, and malicious.  Defendants' bad faith has been evidenced, *inter alia*, by their unlawful use of the "Trader Joe" name notwithstanding their knowledge of Trader Joe's trademark rights; their refusal to alter their conduct upon receipt of Trader Joe's cease-and-desist letters; and their fraudulent conduct before WIPO to deceive it into believing the Platform was not, in fact, named after Trader Joe's.

**Trader Joe's Repeatedly Demands That Defendants Cease And Desist Their Unlawful Activities**

56.    On September 8, 2021, Trader Joe's counsel sent email correspondence to Defendants demanding they cease and desist use of the web domain www.traderjoexyz.com and any other web domains that connote an affiliation or connection to Trader Joe's; cease and desist all use of TRADER JOE'S trademark and any mark likely to cause confusion with the TRADER JOE'S trademark on their website and any associated mobile applications and social media pages, including but not limited to https://twitter.com/traderjoe_xyz; and refrain from using the TRADER JOE'S trademark, in any URL, domain or subdomain, or on their website and any associated mobile applications, Twitter, Facebook, Instagram, or other social media pages.

57.     On January 25, 2022, Trader Joe's counsel sent a further cease-and-desist letter to an employee of Defendants whom it had identified through an investigation into the company, presenting the same demands and further demanding the identities and contact information for the company's founders.  The employee promptly notified the company's founders of Trader Joe's infringement allegations and furnished them with copies of the letter, and then sent Trader Joe's counsel a copy of that correspondence.  However, he informed Trader Joe's counsel that he did not know their true identities—because they used aliases in their interactions—and therefore could not provide that information to Trader Joe's.  He then tendered his resignation from Trader Joe.

58.     Trader Joe's never received a response to its cease-and-desist letters from any of Defendants or any person purporting to represent Trader Joe.

59.     To date, Defendants have refused to comply with Trader Joe's demands.

**Defendants Commit Fraud In Proceedings Over The Disputed Domain Name Before The World Intellectual Property Organization**

60.     On May 4, 2022, and as amended May 13, 2022, Trader Joe's filed its complaint with WIPO against Defendant Cheng Chieh Liu, who had registered the domain name traderjoexyz.com, to divest Defendants of the disputed domain name.

61.     On June 9, 2022, Defendant Cheng Chieh Liu filed his response, disclaiming any intentional association with Trader Joe's and further representing to WIPO that, to the contrary, the Platform was "named for Respondent's brother, Joe Liu, who is an active member of the Trader Joe community."

62.     That origin story was false—and Defendants knew it to be false.  As was later revealed, Defendants had actually named the Platform "after the supermarket," *i.e.*, Trader Joe's.

63.     Defendants contrived that false narrative with the intention that WIPO would rely on it in rendering its decision and, in turn, decide the domain name dispute in their favor.  And they succeeded.

64.     WIPO relied on Defendant Cheng Chieh Liu's false representations. In its decision, WIPO accepted that "[t]he disputed domain name is not an intentional misspelling of TRADER JOE'S," and that "[t]he platform is also named for the Respondent's brother, Joe Liu, who is an active member of the 'Trader Joe' community."  From that foundation, WIPO denied Trader Joe's complaint and allowed Defendants to proceed using the traderjoexyz.com domain name.

65.     As of the date of filing this lawsuit, Defendants have yet to cease and desist their unlawful activities.

66.     Defendants' aforesaid acts have caused and, unless said acts are restrained by this Court, will continue to cause Trader Joe's to suffer irreparable injury.

67.     Trader Joe's has no adequate remedy at law and is therefore entitled to injunctive relief.

## FIRST CAUSE OF ACTION – FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. §§ 1114-1118, 1125)

68.     Trader Joe's incorporates all of the above paragraphs as though fully set forth herein.

69.     Trader Joe's owns the TRADER JOE'S Family of Marks, as described above.  The TRADER JOE'S Family of Marks are valid and protectable. Consumers recognize the TRADER JOE'S Family of Marks as designating Trader Joe's as the source of goods and services.  At all relevant times, Defendants had actual and/or statutory notice of Trader Joe's registrations of its Family of Marks.

70.     Defendants have used in commerce, without the consent of Trader Joe's, the confusingly similar "Trader Joe" name—as well as Trader Joe's exact word mark—in connection with offering and advertising their goods and services.

Defendants' use of the TRADER JOE'S word mark, and the substantially similar "Trader Joe" name, is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' goods and services.

71.     As a direct and proximate result of Defendants' foregoing acts, Trader Joe's has been damaged and has suffered and will continue to suffer immediate and irreparable injury.  Trader Joe's is informed and believes that unless said conduct is enjoined by this Court, Defendants will continue and expand those activities to the continued and irreparable injury of Trader Joe's.  This injury includes a reduction in the distinctiveness of the TRADER JOE'S Family of Marks and injury to Trader Joe's goodwill that damages cannot remedy.  Trader Joe's has no adequate remedy at law.

72.     Trader Joe's is entitled to a permanent injunction pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using in commerce the TRADER JOE'S Family of Marks, the confusingly similar "Trader Joe" name, or any colorable imitations thereof.

73.     Pursuant to 15 U.S.C. § 1117, Trader Joe's is also entitled to recover (i) Defendants' profits, increased to adequately compensate Trader Joe's, (ii) up to treble Trader Joe's ascertainable damages, (iii) Trader Joe's costs of suit, and (iv) prejudgment interest.  Defendants' willful use of the TRADER JOE'S Family of Marks, and the confusingly similar "Trader Joe" name, without excuse or justification, renders this an exceptional case and entitles Trader Joe's to its reasonable attorneys' fees.  Defendants' fraud in the WIPO proceedings that Trader Joe's initiated, which led WIPO to an erroneous determination and thus necessitated the instant action, further confirms this is an exceptional case and entitles Trader Joe's to its reasonable attorneys' fees.

## SECOND CAUSE OF ACTION – FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

74.     Trader Joe's incorporates all of the above paragraphs as though fully set forth herein.

75.     The TRADER JOE'S Family of Marks are distinctive and famous. Those marks became famous prior to the time Defendants first used those marks, or the confusingly similar "Trader Joe" name, in commerce.

76.     Defendants are making use in commerce of the TRADER JOE'S word mark, and the confusingly similar "Trader Joe" name, on their website, the App, and ancillary platforms.

77.     Defendants' use of the "Trader Joe" name, coupled with their unscrupulous and unlawful activities, creates an association between Trader Joe's and unsavory conduct, low quality goods, and general disrepute.

78.     Defendants' use of the famous TRADER JOE'S word mark, and the confusingly similar "Trader Joe" name, accordingly erodes the public's positive association with these marks, thereby tarnishing the TRADER JOE'S Family of Marks.

79.     Defendants' use of the "Trader Joe" name in connection with their Platform also impairs the distinctiveness of the TRADER JOE'S Family of Marks and thereby causes dilution by blurring.

80.     As a direct and proximate result of Defendants' foregoing acts, Trader Joe's has been damaged and has suffered and will continue to suffer immediate and irreparable injury.  Trader Joe's is informed and believes that unless said conduct is enjoined by this Court, Defendants will continue and expand those activities to the continued and irreparable injury of Trader Joe's.  This injury includes a reduction in the distinctiveness of the TRADER JOE'S Family of Marks and injury to Trader Joe's goodwill that damages cannot remedy.  Trader Joe's has no adequate remedy at law.

81.    Trader Joe's is entitled to a permanent injunction pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using in commerce the TRADER JOE'S Family of Marks, the confusingly similar "Trader Joe" name, or any colorable imitations thereof.

82.    Defendants first used the TRADER JOE'S word mark, and the confusingly similar "Trader Joe" name, in 2021 and willfully intended to harm the reputation of the TRADER JOE'S Family of Marks.  Pursuant to 15 U.S.C. § 1117, Trader Joe's is also entitled to recover (i) Defendants' profits, increased to adequately compensate Trader Joe's, (ii) up to treble Trader Joe's ascertainable damages, (iii) Trader Joe's costs of suit, and (iv) prejudgment interest.  Defendants' willful use of the TRADER JOE'S Family of Marks, and the confusingly similar "Trader Joe" name, without excuse or justification, renders this an exceptional case and entitles Trader Joe's to its reasonable attorneys' fees.  Defendants' fraud in the WIPO proceedings that Trader Joe's initiated, which led WIPO to an erroneous determination and thus necessitated the instant action, further confirms this is an exceptional case and entitles Trader Joe's to its reasonable attorneys' fees.

### THIRD CAUSE OF ACTION – VIOLATION OF ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT
### (15 U.S.C. § 1125(d))

83.    Trader Joe's incorporates all of the above paragraphs as though fully set forth herein.

84.    Defendant Cheng Chieh Liu registered the domain name traderjoexyz.com, which is confusingly similar to the famous and distinctive TRADER JOE'S word mark.

85.    Defendants each have used and continue to use the domain name traderjoexyz.com, which is confusingly similar to the famous and distinctive TRADER JOE'S word mark.

86.     Defendants have also registered the domain names trader-joes.site and trader-joe.website, each of which is confusingly similar to the famous and distinctive TRADER JOE'S word mark.

87.     Defendants registered and/or used the traderjoexyz.com, trader-joes.site, and trader-joe.website domain names with the bad faith intent to profit from TRADER JOE'S word mark, including by causing confusion as to affiliation with Trader Joe's and by capitalizing on Trader Joe's name, goodwill, and brand recognition to attract consumers to their own commercial venture.

88.     Pursuant to 15 U.S.C. § 1125(d)(1)(C), Trader Joe's is entitled to an order transferring the domain names traderjoexyz.com, trader-joes.site, and trader-joe.website to Trader Joe's or, in the alternative, to an order of forfeiture or cancellation of the domain names traderjoexyz.com, trader-joes.site, and trader-joe.website.

89.     Pursuant to 15 U.S.C. § 1117, Trader Joe's is also entitled to recover (i) Defendants' profits, increased to adequately compensate Trader Joe's, (ii) up to treble Trader Joe's ascertainable damages, (iii) Trader Joe's costs of suit, and (iv) prejudgment interest.  Defendants' willful use of the "Trader Joe" name and willful use and/or registration of the domain names traderjoexyz.com, trader-joes.site, and trader-joe.website, which are confusingly similar to the TRADER JOE'S Family of Marks, without excuse or justification, render this an exceptional case and entitle Trader Joe's to its reasonable attorneys' fees.  Defendants' fraud in the WIPO proceedings that Trader Joe's initiated, which led WIPO to an erroneous determination and thus necessitated the instant action, further confirms this is an exceptional case and entitles Trader Joe's to its reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION - CALIFORNIA STATUTORY UNFAIR COMPETITION
### (Cal. Bus. & Prof. Code §§ 17200 *et. seq.*)

90.     Trader Joe's incorporates all of the above paragraphs as though fully set forth herein.

91.     Defendants engaged in unlawful, unfair, and/or fraudulent business acts and practices within the meaning of California's Unfair Competition Law ("UCL"), including by infringing and diluting the value of Trader Joe's registered and common-law trademarks.

92.     Defendants' unauthorized use of the TRADER JOE'S word mark, and the confusingly similar "Trader Joe" name, infringes Trader Joe's exclusive rights to its marks, is likely to cause confusion, mistake, or deception as to the source or sponsorship of Defendants' goods and services, and is likely to deceive the public into believing that Defendants' goods and services are sponsored, endorsed, or approved by Trader Joe's, or are otherwise associated with Trader Joe's.

93.     As a proximate result of Defendants' actions, Trader Joe's has suffered and will continue to suffer great and irreparable injury and damage to its business and goodwill, including reputational harm and a reduction in the distinctiveness of its TRADER JOE'S Family of Marks.  Unless Defendants are restrained and enjoined from engaging in said unlawful conduct, Defendants will continue to engage in the same, causing further great and irreparable injury and harm.  The balance of equities and public interest both favor enjoining Defendants' wrongful conduct.  Accordingly, Trader Joe's is entitled to preliminary and permanent injunctive relief as set forth below.

## FIFTH CAUSE OF ACTION - COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

94.     Trader Joe's incorporates all of the above paragraphs as though fully set forth herein.

95.     Trader Joe's owns all rights, title, and interest in and to the distinctive and famous TRADER JOE'S Family of Marks by virtue of its good-faith, extensive manufacture, sale, and advertisement of various goods and services sold under the TRADER JOE'S Family of Marks.

COMPLAINT
2:23-CV-8395

96.     Defendants market goods and services using the famous and distinctive TRADER JOE'S word mark and the confusingly similar "Trader Joe" name.

97.     Such unauthorized use by Defendants infringes Trader Joe's exclusive rights to the TRADER JOE'S Family of Marks and is likely to confuse or deceive the public as to Trader Joe's association with Defendants' goods and services when no such relationship exists.

98.     By such actions infringing Trader Joe's trademarks, Defendants are improperly trading upon Trader Joe's reputation and goodwill and impairing Trader Joe's valuable rights in and to such trademarks.

99.     Defendants have acted with full faith and knowledge of Trader Joe's use of and statutory and common law rights to the TRADER JOE'S Family of Marks, and have done so without regard for the likelihood of consumer confusion created by Defendants' activities.

100.    As a proximate result of Defendants' actions, Trader Joe's has suffered and will continue to suffer great and irreparable injury and damage to its business and goodwill, including a reduction in the distinctiveness of its TRADER JOE'S Family of Marks.  Unless Defendants are restrained and enjoined from engaging in said unlawful conduct, Defendants will continue to engage in the same, causing further great and irreparable injury and harm.  The balance of equities and public interest both favor enjoining Defendants' wrongful conduct.  Accordingly, Trader Joe's is entitled to preliminary and permanent injunctive relief as set forth below.

### SIXTH CAUSE OF ACTION - COMMON LAW CONVERSION

101.    Trader Joe's incorporates all of the above paragraphs as though fully set forth herein.

102.    Trader Joe's had a right to possess the traderjoexyz.com domain name by virtue of its famous and distinctive TRADER JOE'S mark.

103.   Defendants substantially interfered with Trader Joe's property right in the traderjoexyz.com domain name by knowingly and intentionally taking possession of the domain name, including by registering, using, and maintaining the registration for the traderjoexyz.com domain name to the exclusion of Trader Joe's.

104.   Defendants further substantially interfered with Trader Joe's property right in the traderjoexyz.com domain name by knowingly and intentionally refusing to relinquish and return the domain name to Trader Joe's even after Trader Joe's (i) demanded that Defendants cease and desist their use of the traderjoexyz.com domain name, and (ii) demanded in the WIPO domain name dispute proceedings entitled *Trader Joe's Company v. CHENG CHIEH LIU*, Case No. D2022-1620, that the traderjoexyz.com domain name be transferred to Trader Joe's.

105.   Not only did Defendants refuse to return the domain name to Trader Joe's, but also they made fraudulent representations to the WIPO Arbitration and Mediation Center during the course of the domain name dispute proceedings in an effort to prevent Trader Joe's from obtaining the relief it sought—specifically, the transfer of the traderjoexyz.com domain name to Trader Joe's.

106.   On June 9, 2022, Defendant Cheng Chieh Liu filed a response to Trader Joe's WIPO complaint, which had alleged that Defendants had no legitimate claim to the traderjoexyz.com domain name.  In his response, Defendant Cheng Chieh Liu asserted that the Platform's "Trader Joe" name was not an "intentional misspelling of the TRADER JOE'S" mark.  He further represented to WIPO that, instead, the Platform was "named for Respondent's brother, Joe Liu, who is an active member of the Trader Joe community."

107.   On information and belief, Defendant Cheng Chieh Liu acted in concert together with each of Defendants in making those misrepresentations.

108.   Those representations were false, and Defendants knew of their falsity.

109.   Defendants contrived that false narrative with the intention that WIPO would rely on it in rendering its decision and, in turn, decide the domain name dispute in their favor.

110.   As Defendants had planned, WIPO relied on Defendant Cheng Chieh Liu's representations.  In its decision, WIPO accepted that "[t]he disputed domain name is not an intentional misspelling of TRADER JOE'S," and that "[t]he platform is also named for the Respondent's brother, Joe Liu, who is an active member of the 'Trader Joe' community."  WIPO thus denied Trader Joe's complaint and accordingly allowed Defendants to continue controlling and using the traderjoexyz.com domain name.

111.   Trader Joe's did not consent to Defendants' possession of, use of, or refusal to return the traderjoexyz.com domain name.

112.   Trader Joe's suffered damages as a result of Defendants' conduct, namely, an adverse judgment in the WIPO proceedings, Trader Joe's ongoing deprivation of its property right in the traderjoexyz.com domain name, the ongoing injury from Defendants' improper use of the domain name traderjoexyz.com, and the expense of bringing the instant action to rectify the fraudulently-induced WIPO decision.  Trader Joe's is entitled to recover said damages and to an order transferring the domain name traderjoexyz.com to Trader Joe's.

<u>**SEVENTH CAUSE OF ACTION - DECLARATORY RELIEF**</u>
**(28 U.S.C. § 2201)**

113.   Trader Joe's incorporates all of the above paragraphs as though fully set forth herein.

114.   Trader Joe's contends that Defendants have no right to use the name "Trader Joe" or the domain names traderjoexyz.com, trader-joes.site, or trader-joe.website in connection with their commercial venture, including the offering and advertising of their goods and services; and Defendants contend the opposite.

COMPLAINT
2:23-CV-8395

115.   There now exists between the parties an actual and justiciable controversy concerning the rights to the disputed domain names traderjoexyz.com, trader-joes.site, and trader-joe.website and Defendants' ability to continue using the name "Trader Joe" in connection with their commercial enterprise.

116.   A declaration is necessary and appropriate at this time in light of Defendants' ongoing use of the traderjoexyz.com domain name, registration of the trader-joes.site and trader-joe.website domain names, and ongoing use of the broader "Trader Joe" name for their unauthorized cryptocurrency Platform.

117.   Trader Joe's has no adequate remedy at law.

118.   Accordingly, Trader Joe's seeks, pursuant to 28 U.S.C. § 2201, a judgment from this Court declaring that Defendants' use of the "Trader Joe" name infringes on the TRADER JOE'S Family of Marks, and that Defendants are not lawful holders of the domain names traderjoexyz.com, trader-joes.site, and trader-joe.website.

## **PRAYER FOR RELIEF**

WHEREFORE, Trader Joe's respectfully requests the following relief:

1.    That Defendants, and their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participating with any of them, be immediately and permanently enjoined from:

      (a)   using the domain name traderjoexyz.com, trader-joes.site, trader-joe.website, or any similar variant thereof, and/or retaining (or obtaining in the first instance) the registrations for any of said domain names;

      (b)   using the X (formerly known as Twitter), YouTube, Reddit, Github, LinkedIn, Substack, CoinMarketCap, Telegram, Discord, or other social media platform name or handle "Trader

1    Joe," "Trader Joe XYZ," "traderjoe_xyz," or any similar variant

2    thereof;

3    (c)   operating a mobile application by the name "Trader Joe,"

4    "Trader Joe's," "Trader Joe XYZ," or any similar variant

5    thereof, and/or otherwise using any of said names in connection

6    with a mobile application;

7    (d)   offering goods or services, operating a platform, and/or

8    advertising or promoting said platform, goods, or services as

9    "Trader Joe," "Trader Joe's," "Trader Joe XYZ," or any similar

10    variant thereof;

11    (e)   directly or indirectly infringing Trader Joe's trademarks in any

12    manner including, but not limited to, advertising, selling, and/or

13    offering for sale any goods or services bearing any confusingly

14    similar imitations of any mark in the TRADER JOE'S Family of

15    Marks;

16    (f)   promoting or facilitating any services in any manner that is

17    likely to confuse, mislead, or deceive members of the public into

18    believing that Joemart Ltd d/b/a Trader Joe, SOJ Trading Ltd

19    d/b/a Joepegs, or any of their agents, products, or services are

20    associated with Trader Joe's, are sponsored, approved, or

21    licensed by Trader Joe's, or are in any other way connected or

22    affiliated with Trader Joe's;

23    (g)   effecting assignments or transfers, forming new entities or

24    associations, or utilizing any other means or device for the

25    purpose of circumventing or otherwise avoiding the prohibitions

26    set forth in subparagraphs (a) through (f) above.

27

28

- 32 -

COMPLAINT
2:23-CV-8395

2.      That Defendants be ordered to transfer registration and ownership of the domain names traderjoexyz.com, trader-joes.site, and trader-joe.website to Trader Joe's;

3.      That the Court declare that Defendants' use of the "Trader Joe" name infringes on the TRADER JOE'S Family of Marks, and that Defendants are not lawful holders of the domain names traderjoexyz.com, trader-joes.site, and trader-joe.website;

4.      Judgment in Trader Joe's favor and against Defendants on all causes of action alleged herein;

5.      Damages in an amount to be further proven at trial;

6.      Statutory damages;

7.      Punitive damages;

8.      Costs of suit incurred herein;

9.      Prejudgment interest;

10.     Attorneys' fees and costs; and

11.     Such other and further relief as the Court may deem to be just and proper.

## <u>JURY DEMAND</u>

Trader Joe's demands a jury trial for all issues so triable.

Dated: October 5, 2023

DAVID R. EBERHART
DAWN SESTITO
O'MELVENY & MYERS LLP


By:      */s/ David R. Eberhart*
          David R. Eberhart

Attorneys for Plaintiff
TRADER JOE'S COMPANY

COMPLAINT
2:23-CV-8395