1  **KILPATRICK TOWNSEND & STOCKTON LLP**
2  JONATHAN W. THOMAS (Admitted *Pro Hac Vice*)
   jwthomas@ktslaw.com
3  The Grace Building
   1114 Avenue of the Americas
4  New York, NY  10036
   Telephone: 212-775-8700
5  Facsimile: 212-775-8800

6  DANIEL E. GAITAN (CA Bar No. 326413)
7  dgaitan@ktslaw.com
   1801 Century Park East Suite 2300
8  Los Angeles, CA  90067
   Telephone: 310-248-3830
9  Facsimile: 310-860-0363

10  Attorneys for all Defendants

11                **UNITED STATES DISTRICT COURT**

12           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13

14  TRADER JOE'S COMPANY, a          Case No. 2:23-cv-08395-CBM (KSx)
15  California corporation,          *Judge: Hon. Consuelo B. Marshall*

16           Plaintiff,
                                     **NOTICE OF MOTION AND**
17      v.                           **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES IN SUPPORT OF**
18  JOEMART LTD D/B/A TRADER         **DEFENDANTS' MOTION TO**
19  JOE, a corporation of the British Virgin   **DISMISS THE FIRST AMENDED**
    Islands; SOJ TRADING LTD D/B/A   **COMPLAINT PURSUANT TO**
20  JOEPEGS, a corporation of the British   **FEDERAL RULE OF CIVIL**
    Virgin Islands; CHENG CHIEH LIU,  **PROCEDURE 12(B)(6)**
21  an individual; and DOES 1-10,
22           Defendants.            Date:        April 2, 2024
                                    Time:        10:00 am P.T.
23                                  Courtroom.: 8D

24

25                                  Complaint Filed:   October 5, 2023

26

27

28

1     **TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

2     **PLEASE TAKE NOTICE THAT**, on Tuesday, April 2, 2024 at 10:00 a.m.,

3 or as soon thereafter as this matter may be heard before the Honorable Consuelo B.

4 Marshall in Courtroom 8D, located at 350 West 1st Street, Los Angeles, CA 90012,

5 Defendant Joemart Ltd, Defendant SOJ Trading Ltd, and Defendant Cheng Chieh Liu

6 (collectively, "Defendants") will and hereby do move, pursuant to Rule 12(b)(6) of

7 the FEDERAL RULES OF CIVIL PROCEDURE ("Rule 12(b)(6)"), for an Order dismissing

8 Plaintiff Trader Joe's Company's ("Plaintiff") First Amended Complaint ("FAC") in

9 its entirety (the "Motion").

10     The grounds for Defendants' Motion are that the claims for relief asserted in

11 the FAC fail to and do not state a claim for relief under Rule 12(b)(6).  Defendants

12 base their Motion upon this Notice of Motion and Memorandum of Points and

13 Authorities; the concurrently filed Request for Judicial Notice ("RJN"), and

14 Declaration of Daniel Gaitan ("Gaitan Decl.") in support thereof; all pleadings and

15 other records on file in this action; any other matters that may be judicially noticed;

16 and such further evidence and arguments as may be presented at or before the hearing

17 on this Motion.

18     Defendants bring their Motion following the conference of counsel pursuant to

19 L.R. 7-3, which took place telephonically on February 9, 2024.

20 DATED:  February 16, 2024    Respectfully submitted,

21     KILPATRICK TOWNSEND & STOCKTON LLP

22

23     By: */s/Jonathan W. Thomas*

24     JONATHAN W. THOMAS (*pro hac vice*)
    DANIEL E. GAITAN

25     *Attorneys for all Defendants*

26

27

28

1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................. 2

       A.    Plaintiff's Use Of "Trader Joe's" For a Grocery Store .................... 2

       B.    Defendants' Use Of "Trader Joe" and "Merchant
             Moe" for a DEX ............................................................................... 2

       C.    The FAC ............................................................................................ 3

III.   GOVERNING LEGAL STANDARD ..................................................... 4

IV.    LEGAL ANALYSIS ............................................................................... 4

       A.    Plaintiff Fails to State Plausible Trademark
             Infringement and Unfair Competition Claims ................................. 4

             1.    There is No Likelihood of Confusion Because
                   the Parties' Goods and Services are "Totally
                   Unrelated" ................................................................................ 6

             2.    Plaintiff's Allegations of Likelihood of
                   Confusion are Implausible ........................................................ 8

                   a.    The Parties Use Divergent Marketing
                         Channels ........................................................................ 9

                   c.    Defendants' Customers are Highly
                         Sophisticated ............................................................... 12

                   d.    Plaintiff's Allegations of Bad Faith Are
                         Implausible ................................................................... 13

                   e.    Plaintiff Fails to Allege Plausible Actual
                         Confusion ..................................................................... 13

       B.    Plaintiff Fails to State a Plausible Cybersquatting
             Claim ............................................................................................... 15

       C.    Plaintiff Fails to State a Plausible Trademark-
             Dilution Claim ................................................................................ 16

             1.    Plaintiff Fails to Plausibly Allege Fame ............................... 17

             2.    Plaintiff Fails to Plausibly Allege Blurring .......................... 19

             3.    Plaintiff Fails to Plausibly Allege Tarnishment .................... 21

       D.    Plaintiff Fails to State a Timely or Plausible
             Conversion Claim ........................................................................... 23

1

**V.**    CONCLUSION ............................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com*,
  No. CV 10-03738 AB, 2015 WL 5311085 (C.D. Cal. Sept. 10, 2015) ............. 16

6

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979)........................................5, 6, 7, 8, 9, 12, 13, 15, 20

7

8

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
  No. CV 13-05167 BRO, 2014 WL 11456533 (C.D. Cal. Oct. 24,
  2014)........................................................................................................ 20

9

10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 4

11

12

*Aurora World, Inc. v. Ty Inc.*,
  719 F. Supp. 2d 1115 (C.D. Cal. 2009)................................................... 14

13

14

*Beckett v. Urban*,
  2015 WL 12552044 (C.D. Cal. July 6, 2015) ..................................... 7, 8

15

16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 4

17

18

*Bosley Med. Inst., Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005)................................................................. 13, 14

19

20

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
  174 F.3d 1036 (9th Cir. 1999)................................................................ 6

21

22

*Dahon N. Am., Inc. v. Hon*,
  No. 2:11-cv-05835-ODW, 2012 WL 1413681 (C.D. Cal. Apr. 24,
  2012)........................................................................................................ 17

23

24

*Deere & Co. v. MTD Prods., Inc.*,
  41 F.3d 39 (2d Cir. 1994) ...................................................................... 21

25

26

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Meyer Inc.*,
  No. CV 20-4822-PLA, 2020 WL 6875178, at *8 (C.D. Cal. Oct. 23,
  2020)........................................................................................... 16, 17, 19

27

28

*Dfinity Found. v. Meta Platforms, Inc.*,
   2022 WL 16857036 (N.D. Cal. Nov. 10, 2022)......................................7, 12, 13

*Fisher Stoves, Inc. v. All Nighter Stove Works*,
   626 F. 2d 193 (1st Cir. 1980) ...........................................................................14

*Gizmo Beverages, Inc. v. Park*,
   No. 8:17-cv-01037-JDE, 2019 WL 141461 (C.D. Cal. Jan. 9, 2019)................24

*Glob. Aopgee v. Sugarfina, Inc.*,
   No. CV 18-5162-RSWL-E, 2018 WL 4945305 (C.D. Cal. Oct. 10,
   2018).................................................................................................................21

*Global Apogee v. Sugarfina, Inc.*,
   2023 WL 3235934, at *4 (C.D. Cal. Mar. 31, 2023) ..........................................5

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
   599 U.S. 140 (2023) ...........................................................................................6

*Kaplan, Inc., v. Yun*,
   16 F. Supp. 3d 341 (S.D.N.Y. 2014) .................................................................16

*Keim v. Trader Joe's Company*,
   No. 9:19-cv-81025-RLR, Dkt. 1 (S.D. Fla. July. 17, 2019).............................22

*Ketab Corp. v. Mesriani and Assoc., P.C.*,
   734 Fed. App'x 401 406 (9th Cir. 2018).............................................................7

*Kremer v. Cohen*,
   325 F.3d 1035 (9th Cir. 2003) ..........................................................................23

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   632 F.2d 817, 208 U.S.P.Q. 713 (9th Cir. 1980)..............................................10

*Longo v. Longo*,
   No. 8:20-CV-00829-AB-RAO, 2020 WL 7774925 (C.D. Cal. Nov.
   12, 2020)...........................................................................................................18

*M2 Software, Inc. v. Madacy Ent.*,
   421 F.3d 1073 (9th Cir. 2005).............................................................................9

*MGA Ent., Inc. v. Dynacraft BSC, Inc.*,
   No. 2:17-cv-08222-ODW-KS, 2018 WL 2448123 (C.D. Cal. May 30,
   2018).................................................................................................................18

*Murray v. Cable Nat'l Broad. Co.*,
   86 F.3d 858 (9th Cir. 1996) ................................................................... 7

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ................................................................ 9

*Nutri/System, Inc. v. Con-Stan Industries, Inc.*,
   809 F.2d 601 (9th Cir. 1987) ............................................................... 14

*OC Kickboxing & Mixed Martial Arts v. Warrior Arts All., Inc.*,
   No. SA CV 19-0004-DOC, 2019 WL 3210093 (C.D. Cal. May 3,
   2019) ........................................................................................................ 23

*Performance Design Products LLC v. Plantronics, Inc.*,
   2019 WL 3082160 (S.D. Cal. July 15, 2019) ..................................... 5, 6

*Sony Comput. Ent., Inc. v. Connectix Corp.*,
   203 F.3d 596 (9th Cir. 2000) ............................................................... 21

*Spearmint Rhino Cos. Worldwide, Inc. v. Chiappa Firearms, Ltd.*,
   2012 WL 8962882 (C.D. Cal. Jan. 20, 2012) ........................................ 7

*Toho Co., Ltd. v. Sears, Roebuck & Co.*,
   645 F. 3d 788, 790 (9th Cir. 1981) .................................................. 7, 13

*Trader Joe's Co. v. Trader Joe's United*,
   2024 WL 305697 (C.D. Cal. Jan. 12, 2024) ........................ 4, 5, 6, 8, 9, 10, 12

*Van Buskirk v. Cable News Network, Inc.*,
   284 F.3d 977 (9th Cir. 2002) ................................................................. 4

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ................................................ 4

**Statutes**

15 U.S.C. § 1114 ........................................................................................ 3

15 U.S.C. § 1125(c) ................................................................................... 3

15 U.S.C. § 1125(c)(2) ............................................................................. 17

15 U.S.C. § 1125(c)(2)(A)(i)-(iv) ............................................................ 17

15 U.S.C. § 1125(c)(2)(B) ........................................................................ 19

15 U.S.C. § 1125(c)(2)(B)(i)-(vi) ...................................................... 20

15 U.S.C. § 1125(c)(2)(C) ............................................................. 21

15 U.S.C. § 1125(d) ...................................................................... 3

15 U.S.C. § 1125(d)(1) ................................................................. 19

15 U.S.C. § 1125(d)(1)(A)(i) ......................................................... 15

15 U.S.C. § 1125(d)(2) ................................................................. 23

Cal. Bus. & Prof. Code §§ 17200 et. seq. ........................................ 3

Cal. Code Civ. P. § 339(1) .......................................................... 23

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................... i, 2, 4, 6

Fed. R. Evid. 201 ......................................................................... 4

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair
    Competition, § 23:10 (5th ed.) ............................................... 12

NOTICE OF MOTION AND MOTION TO DISMISS

## I.     INTRODUCTION

Plaintiff operates TRADER JOE'S-brand brick-and-mortar grocery stores, which sell tangible apples, oranges, and other grocery items.  Defendants do not sell apples or oranges—or any tangible product.  Defendant also do not operate any brick-and-mortar stores.   In stark contrast to Plaintiff, Defendants operate an intangible TRADER JOE and MERCHANT MOE decentralized exchange ("DEX"), which allows Defendants' customers to buy, sell, and trade intangible cryptocurrencies and non-fungible tokens ("NFTs").   Under well-settled Ninth Circuit law, the parties' "totally unrelated" goods and services allows this Court to find at the pleading stage that there is no likelihood of consumer confusion as a matter of law, which is the *sine qua non* of Plaintiff's trademark and unfair competition claims.

Not only are the parties' goods and services totally unrelated but also: (i) Plaintiff does not allege that it intends to offer Defendants' services; (ii) the parties use divergent marketing channels; and (iii) the parties' marks create strikingly different overall commercial impressions in the marketplace, which (iv) evinces Defendants' good-faith efforts to avoid any alleged confusion amongst its customers. Given these factors—all of which are properly before this Court at the pleading stage—Plaintiff unsurprisingly does not allege that a single instance of actual purchasing confusion has occurred amongst Defendants' customers, which is even less surprising given that, since 1998, Plaintiff has co-existed alongside a "TraderJoe.com," which offers financial advice.   These factors also confirm how implausible it is that confusion is likely to occur amongst Defendants' customers.

Equally implausible are Plaintiff's claims for cybersquatting, trademark dilution, and conversion.   Plaintiff's cybersquatting claim is an impermissible regurgitation of its infringement claim.   Plaintiff's dilution claim rests on mere conclusory allegations of fame, blurring, and tarnishment.   Plaintiff's conversion claim is untimely because Plaintiff filed this lawsuit more than two years after it became aware of the domain name <traderjoexyz.com>.

For these reasons, and those discussed, *infra*, Defendants respectfully request that this Court dismiss Plaintiff's First Amended Complaint ("FAC") with prejudice pursuant to FED. R. CIV. P. 12(b)(6).

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Use Of "Trader Joe's" For a Grocery Store

Plaintiff alleges ownership of common-law marks and several United States trademark registrations for a family of TRADER JOE'S-formative marks and logos for "retail grocery services and for a range of food and beverage products and associated merchandise."   FAC ¶ 1; *see also id.* ¶¶ 43-6.   Plaintiff's federally registered marks include the word mark TRADER JOE'S and inset design marks:

**TRADER JOE'S**

*Id.* at ¶ 43-44.

As shown on Plaintiff's website (incorporated into the FAC at ¶ 40), it also uses marks such as: .   *See* Gaitan Decl. at ¶ 3, Ex. A; RJN, Ex. A.   While Plaintiff alleges that it has operated grocery stores and sold its products under its family of TRADER JOE'S marks since 1967 (FAC ¶ 38), Plaintiff does not allege that it does, ever has, or intends to sell products on its website. *See id.* at ¶ 40.   In fact, Plaintiff admits that its "customers cannot place orders" on its website. *Id.*

Plaintiff does not allege that it operates or owns any trademark rights for a DEX; services related to operating a DEX; or any other goods or services that are and/or concern currency, payment-processing systems, or financial in nature.   Nor does Plaintiff allege that it has any intent to begin offering any of these services.

### B.   Defendants' Use Of "Trader Joe" and "Merchant Moe" for a DEX

Defendants operate a "Trader Joe" DEX and a franchise thereof, namely, "Merchant Moe," which are accessible via the websites www.traderjoexyx.com and https://merchantmoe.com/, respectively, and allow Defendants' customers to buy, sell, and trade cryptocurrencies and NFTs.   *See* FAC ¶¶ 2, 10, 68; *see also* Gaitan Decl. at ¶¶ 4-5, Ex. B-C; RJN, Ex. B-C (Defendants' Trader Joe Terms and

Conditions of Service explaining that, *inter alia*, their website "provides a user interface ('Platform') to access a decentralized protocol on the Avalanche blockchain […]" and Defendants' Merchant Moe Terms and Conditions of Service explaining their website provides access to a "non-custodial decentralized exchange protocol on the Mantle blockchain network […]").

Defendants' DEX is accessible only on and through its websites. FAC ¶ 2. To advertise Defendants' DEX, they use the word marks "TRADER JOE"; "MERCHANT MOE"; various iterations of the inset fictional character; and the inset MERCHANT MOE logo on their website and social-media accounts:

  

*See* FAC ¶¶ 5-9; *see also* Gaitan Decl. at ¶¶ 4-12, Exs. B-J; RJN, Exs. B-J.

**C.    The FAC**

Plaintiff initiated this action on October 5, 2023. *See* Doc No. 1. Defendants moved to dismiss the original Complaint on January 17, 2024. *See* Doc. No. 15. Plaintiff filed its FAC on February 2, 2024. *See* Doc. No. 16. The FAC includes the same claims for relief as the original Complaint, namely: (i) trademark infringement under 15 U.S.C. § 1114 ("§ 32 of the Lanham Act"); (ii) cybersquatting under 15 U.S.C. § 1125(d) ("ACPA"); (iii) trademark dilution under 15 U.S.C. § 1125(c) ("§ 43(c) of the Lanham Act"); (iv) "unlawful, unfair and/or fraudulent business acts and practices" under California's Unfair Competition Law ("UCL"); (v) common law trademark infringement and unfair competition; and (vi) common law conversion. *See* FAC at pgs. 22-30. Plaintiff's Seventh Cause of Action in the FAC seeks a declaration "that Defendants' use of the 'Trader Joe' name infringes on the TRADER JOE'S Family of Marks, and that Defendants are not lawful holders of the domain names traderjoexyz.com, trader-joes.site, and trader-joe.website." *Id*. at ¶ 139.[1]

Like in the original Complaint, each claim in the FAC is implausible.

---

[1] Defendants do not own or operate <trader-joes.site> or <trader-joe.website>.

### III.   GOVERNING LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Trader Joe's Co. v. Trader Joe's United*, 2024 WL 305697, at *2 (C.D. Cal. Jan. 12, 2024) (granting Rule 12(b)(6) motion to dismiss) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*")).

Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Plausibility requires the pleader to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Accordingly, the Court need not accept as true mere "legal conclusions." *Id*.  Likewise, the court need not credit "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

When assessing plausibility, the Court may consider the Complaint's allegations; documents attached to the Complaint; documents and information incorporated into the Complaint by reference; and information that is subject to judicial notice under FED. R. EVID. 201.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *see also Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007).  The Court can also "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### IV.   LEGAL ANALYSIS

#### A.   Plaintiff Fails to State Plausible Trademark Infringement and Unfair Competition Claims

In the FAC's First, Fourth, and Fifth Causes of Action, Plaintiff seeks relief for alleged federal trademark infringement under § 32 of the Lanham Act, unfair competition under UCL § 17200, and trademark infringement and unfair competition

under California's common law. "To state all three of these claims, a plaintiff must allege facts to demonstrate that (1) plaintiff has a valid, protectable trademark, and (2) that the defendant's use of that mark is likely to cause confusion." *Trader Joe's Co.*, 2024 WL 305697, at *4; *accord Performance Design Products LLC v. Plantronics, Inc.*, 2019 WL 3082160, at *3 (S.D. Cal. July 15, 2019) (analyzing claims "'jointly' [] because […] all three turn[] on whether there is a 'likelihood of confusion'").

Defendants do not dispute that Plaintiff plausibly alleges ownership of its family of TRADER JOE'S marks. However, to the extent Plaintiff alleges that it owns trademark rights in the term "MERCHANT" when used for an individual who works in Plaintiff's grocery stores, that is implausible. Indeed, in this context, Plaintiff alleges that it uses the term "Merchant" in a generic sense; however, "[g]eneric terms are not protectable [as trademarks] because they do not identify the source of a product." *Global Apogee v. Sugarfina, Inc*., 2023 WL 3235934, at *4 (C.D. Cal. Mar. 31, 2023). Nonetheless, Plaintiff appears to allege in the FAC that, even in the absence of trademark rights in the generic term "Merchant," Defendants' use of "Merchant Moe" and its MERCHANT MOE logo create a likelihood of confusion amongst Defendants' customers. This is just as implausible as Plaintiff's allegations that Defendants' use of the domain name <traderjoexyz.com>; "Trader Joe"; and imagery for a DEX that allows users to buy, sell, and trade intangible cryptocurrencies and NFTs creates a likelihood of consumer confusion with Plaintiff's tangible grocery stores.

Courts in the Ninth Circuit assess the plausibility of allegations of likelihood of confusion—*i.e.*, the third element of Plaintiff's trademark-related claims—through the prism of the "*Sleekcraft*" factors, which are: "(1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) types of goods and degree of care consumers are

1    likely to exercise when purchasing them; (7) intent of defendants in selecting the
2    infringing mark; and (8) likelihood that the parties will expand their product lines.
3    *Trader Joe's Co.*, 2024 WL 305697, at *4; (citing *AMF Inc. v. Sleekcraft Boats,* 599
4    F.2d 341, 348 (9th Cir. 1979) ("*Sleekcraft*"). While some *Sleekcraft* factors—"such
5    as the similarity of the marks and whether two companies are direct competitors—
6    will always be important," the factors are "pliant" and "case-specific." *Brookfield*
7    *Comm'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

8         Plaintiff recently argued—incorrectly—that the *Sleekcraft* factors allegedly are
9    "fact-intensive and thus ill-suited for disposition on a motion to dismiss []." *Trader*
10   *Joe's Co.*, 2024 WL 305697, at *5.   As the Court held when rejecting Plaintiff's
11   argument: "[s]imply put, not 'every infringement case involving a source-identifying
12   use requires full-scale litigation . . . . [I]f, in a given case, a plaintiff fails to plausibly
13   allege a likelihood of confusion, the district court should dismiss the complaint under
14   Federal Rule of Civil Procedure 12(b)(6).'" *Id.* (quoting *Jack Daniel's Props., Inc. v.*
15   *VIP Prods. LLC*, 599 U.S. 140, 157 n.2 (2023)).   And courts do.   Indeed, courts in
16   this district dismiss infringement and dilution claims at the pleading stage when, as
17   here: (i) the parties' goods and services are "totally unrelated"; (ii) the parties use
18   different marketing channels; and/or (iii) the parties' marks are dissimilar.   *See*, *e.g.*,
19   *Performance Design Products LLC*, 2019 WL 3082160, at *4 n.5 (collecting cases).
20   In fact, a court in this District dismissed Plaintiff's infringement and dilution claims
21   at the pleading stage in a different case last month.   *See Trader Joe's Co.*, 2024 WL
22   305697, at *9.   This Court should, too.

23        **1.     There is No Likelihood of Confusion Because the Parties'**
24             **Goods and Services are "Totally Unrelated"**

25        Under the second *Sleekcraft* factor, "'[r]elated goods are those products which
26   would be reasonably thought by the buying public to come from the same source if
27   sold under the same mark.'"   *Trader Joe's Co.*, 2024 WL 305697, at *5 (quoting
28   *Sleekcraft*, 599 F.2d at 348 n.10 (citation omitted)).   This requires the court to "focus

on the [alleged] infringee's customers and ask whether they are likely to associate its products with the infringer's." *Dfinity Found. v. Meta Platforms, Inc.*, 2022 WL 16857036 at *9 (N.D. Cal. Nov. 10, 2022).

Courts in the Ninth Circuit dismiss trademark claims at the pleading stage when the parties' goods and services are "totally unrelated" such that confusion amongst the defendant's customers is "unlikely as a matter of law." *Ketab Corp. v. Mesriani and Assoc., P.C.*, 734 Fed. App'x 401 406 (9th Cir. 2018) (affirming dismissal at pleading stage) (citing *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996)); *see also Sleekcraft*, 599 F. 2d at 348 ("If the goods are totally unrelated, there can be no infringement because confusion is unlikely").

For example, in *Ketab*, the Ninth Circuit affirmed the district court's finding "that the Mesriani Defendants' legal services and Ketab's information discovery services were 'totally unrelated' and therefore confusion was unlikely as a matter of law." *Id*. In doing so, the Ninth Circuit cited its decision in *Murray*, wherein it affirmed the district court's dismissal of trademark claims at the pleading stage because the defendant "produce[d] network television programming" and the plaintiff conducted an "unrelated" service, namely, "'man-on-the-street' consumer surveys and s[old] his services to business clients for use in television commercial advertising." *Murray*, 86 F. 3d at 861.

As another example, in *Toho Co., Ltd. v. Sears, Roebuck & Co.*, the Ninth Circuit affirmed the district court's dismissal of trademark claims at the pleading stage because "Sears sells garbage bags. Toho produces or sponsors only literary works and toys." 645 F.3d 788, 790 (9th Cir. 1981). As an additional example, in *Spearmint Rhino Cos. Worldwide, Inc. v. Chiappa Firearms, Ltd.*, the district court dismissed trademark claims at the pleading stage because the parties' goods and services were "in no way related" but instead were "in greatly different fields," namely, "adult entertainment and the manufacture of firearms […]." 2012 WL 8962882, at *1 (C.D. Cal. Jan. 20, 2012). As a still further example, in *Beckett v.*

*Urban*, the district court dismissed trademark claims at the pleading stage because the parties' goods and services were "not closely related," namely, "audio and video recordings featuring music and artistic performances by a rock band" (plaintiff) versus "marketing a guitar and guitar lesson kit complete with audio and video recordings that teaches a consumer to use and play guitar" (defendant). 2015 WL 12552044, at *3 (C.D. Cal. July 6, 2015).

Here, Defendants highlighted in their motion to dismiss the original Complaint that Plaintiff failed to allege there was any relatedness or proximity between the parties' goods and services. *See* Doc. No. 15 at pgs. 17-8. The FAC suffers the same pleading deficiency. This is not surprising. It would strain credulity for Plaintiff to allege that Defendants' customers would mistakenly believe there was any association or connection between the intangible cryptocurrencies and NFTs they buy, sell, and trade on Defendants' intangible DEX and the tangible apples, oranges, and other tangible grocery items sold in Plaintiff's physical stores.

Defendants also highlighted in their motion to dismiss the original Complaint that Plaintiff did not allege it intends to offer a DEX or any other good or service that is remotely proximate or related to a DEX or intangible cryptocurrency or NFTs. *See* Doc. No. 15 at 17. The FAC suffers this same pleading deficiency, which underscores the implausibility of Defendants' customers ever having any reason to believe that Plaintiff has embarked on a radical style drift from selling tangible apples and oranges to offering and/or having any type of association with or connection to a "totally unrelated" DEX that allows the buying, selling, and trading of intangible cryptocurrencies and NTFs. *See Trader Joe's Co.,* 2024 WL 305697, at *8 n.11 (final *Sleekcraft* factor did not "help Plaintiff establish likelihood of confusion" where "Plaintiff does not [allege] that it plans to begin selling" Defendant's services).

### 2. Plaintiff's Allegations of Likelihood of Confusion are Implausible

Even if there was any plausible degree of relatedness or proximity between the

parties' goods and services, the allegations in the FAC—when viewed through the prism of the remaining *Sleekcraft* factors—re-confirm what Defendants highlighted in their motion to dismiss the original Complaint, namely, Plaintiff's allegations of likelihood of confusion are implausible.

### a.      The Parties Use Divergent Marketing Channels

When assessing the fifth *Sleekcraft* factor, courts consider the degree of convergence between the parties' marketing channels, *i.e.*, "whether the parties' customer bases overlap and how the parties advertise and market their products." *Trader Joe's Co.,* 2024 WL 305697, at *7.  Differences in the parties' marketing channels "weigh[] heavily" in the ultimate assessment of "whether there is a likelihood of confusion.  *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1080 (9th Cir. 2005).

Plaintiff appears to allege in the FAC that that the parties' shared use of the Internet for marketing constitutes similar marketing channels. *See* FAC ¶ 67. Plaintiff's allegation fails as a matter of law; every company advertises on the Internet.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011) ("[T]his factor becomes less important when the marketing channel is less obscure.  Today, it would be the rare commercial retailer that did not advertise online . . . .").

Moreover, as the Court in *Trader Joe's Co.* recently held when assessing marketing convergence (or the lack thereof) and dismissing Plaintiff's Complaint at the pleading stage, the "point of sale is most relevant" when, as here, the Plaintiff only sells products in stores and the defendant only sells products/services on its website:

> [T]he point of sale is most relevant on these particular facts.[] Consumers only encounter the Union's products in the context of its website…While Trader Joe's also operates a website, consumers cannot purchase any Trader Joe's products online.  In-store grocery retail is the very core of Trader Joe's as a company.  Given this context, it is simply not plausible to imagine a reasonable consumer going to the Union's website, purchasing a Union-branded coffee

mug, and mistakenly believing it to be sold by Trader Joe's. Analyzed in its totality, this factor also weighs against a possible likelihood of confusion.

2024 WL 305697, at *7.

That is precisely the case here. As alleged, shown, and referenced in the FAC, Plaintiff only offers its grocery items and services in its physical stores. FAC ¶ 40 ("The Trader Joe's website receives over 3.4 million visitors monthly **even though customers cannot place orders there**, which is a testament to the popularity of its brand.") (emphasis added). In stark contrast, Defendants' DEX is accessible only on/through its website, and only after Defendants engage in a multi-step process explained in the customer sophistication section. *Gaitan Decl.* at ¶ 4 Ex. B; RJN, Ex. B. Under these circumstances, it is not plausible that a customer buying, selling, and/or trading cryptocurrencies or NFTs on Defendants' DEX would mistakenly believe that Plaintiff—the operator of tangible grocery stores that only sell tangible products—is the source of Defendants' intangible DEX or sponsors or endorses it, or is associated or affiliated with it.

### b. The Parties' Marks Create Different Overall Impressions

When assessing similarity under the third *Sleekcraft* factor, courts must consider, *inter alia*, the parties' marks "in their entirety and as they appear in the marketplace." *Trader Joe's Co.*, 2024 WL 305697, at *6. As such, "[i]t is axiomatic in trademark law that 'side-by-side' comparison is not the test." *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822, 208 U.S.P.Q. 713 (9th Cir. 1980).

Here, the parties' marks create strikingly different overall impressions in the marketplace. When Plaintiff's customers visit its website and/or enter its stores, they see the mark "Trader Joe's" in red lettering, a red-and-white color scheme; and/or a black-and-white color scheme. Examples of these marks are below:

**TRADER JOE'S**      

Plaintiff does not allege that it uses—or intends to use—any fictional

characters in its advertising or branding for its unrelated grocery stores.  In stark contrast, when Defendants' customers visit Defendants' social-media accounts and/or their websites, they predominantly see Defendants' fictional character: a bearded, overalls-wearing man that looks nothing like Plaintiff's family of TRADER JOE'S marks and does not suggest grocery stores:

    

To further reinforce the differences between the parties and their goods and services, when Defendants' customers see the word "Trader Joe" on Defendants' social-media accounts and/or its website, it is in a different font color and font type than what Plaintiff uses for its family of TRADER JOE'S marks and, what is more, is often in close proximity to text that identifies the nature of Defendants' services, namely, a DEX.  Examples are below:



The same is true when Defendants' customers see the MERCHANT MOE word mark and logo, which look strikingly different than any word mark or logo that Plaintiff could plausibly allege to own: [5]

---

[2] *See* Gaitan Decl. at ¶ 6, Ex. D; RJN, D (*TraderJoe*, CoinMarketCap, https://coinmarketcap.com/community/profile/TraderJoe/ (last visited Feb. 16, 2024).

[3] *See* Gaitan Decl. at ¶ 7, Ex. E; RJN, E (*Trader Joe XYZ*, Github, https://github.com/traderjoe-xyz/ (last visited Feb. 16, 2024).)

[4] *See* Gaitan Decl. at ¶ 8, Ex. F; RJN, F (@TraderJoe_xyz, X (formerly Twitter), https://twitter.com/traderjoe_xyz (last visited Feb. 16, 2024).)

[5] *See* Gaitan Decl. at ¶ 5, Ex. C; RJN, C (https://merchantmoe.com/ (last visited Feb.

### c. Defendants' Customers are Highly Sophisticated

Courts assess the sixth *Sleekcraft* factor based on "the typical buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. Confusion is less likely where buyers exercise care and precision in their purchases such as for "sophisticated items." *Dfinity Found.*, 2022 WL 16857036 at *8.

Here, Plaintiff's allegations sound in "forward" confusion, *i.e.*, confusion about the source, origin, association, etc., of Defendants' DEX. *See* FAC ¶ 85; *see also* 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 23:10 (5th ed., database updated Dec. 2023) ("The traditional pattern of classic "forward confusion" occurs when customers mistakenly think that the junior user's goods or services are from the same source as or are connected with the senior user's goods or services."). Accordingly, the relevant customer base is Defendants', not Plaintiff's. *See id*. at § 32:159 (In a traditional case claiming 'forward confusion, not 'reverse' confusion, the proper universe to survey is composed of the potential buyers of the *junior* user's goods or services.") (emphasis in original).

Plaintiff alleges that Defendants' "Joe" token and associated fees to conduct the transactions are "low." *See* FAC ¶ 68. However, unlike common consumer products—or products purchased impulsively, like Plaintiff's grocery items—cryptocurrencies and NFTs operate within a complex ecosystem driven by blockchain technology and decentralized networks, which requires sophisticated investors and multiple, complex steps. *See Dfinity*, 2022 WL 16857036, at *10 (granting motion to dismiss, recognizing decentralized platforms and NFTs require sophistication). Plaintiff illustrates this complexity by highlighting Defendants' "how-to guides,"[6] which assist their customers with the multiple steps they must take to use Defendants' DEX. *See* FAC ¶ 68; *see also Trader Joe's Co.*, No. 2024 WL 305697, at *8 (dismissing Plaintiff's Complaint; the looking beyond the context of price when

---

[6] *See* Gaitan Decl. at ¶ 4, Ex. B; RJN, B

16, 2024).)

examining this *Sleekcraft* factor by assessing how the defendant's customers interacted with its website). Defendants' Terms and Conditions of Service also expressly state, "[y]ou must not be a citizen of, or be located, organized or resident in the United States of America ('U.S.')." *Gaitan Decl*. at ¶ 4 Ex. B; RJN, Ex. B. This serves as an additional indication for a sophisticated customer, exercising ordinary caution, that they are not making a purchase from Plaintiff, a company that operates grocery stores in the U.S. (FAC ¶ 39-40, 43).

### d.    Plaintiff's Allegations of Bad Faith Are Implausible

For this factor to support a likelihood of confusion, Plaintiffs must allege that Defendants "intended to profit by confusing consumers." *Toho*, 645 F.2d at 791 n.2. Plaintiffs have made no such allegations. If Plaintiff contends that Defendants allegedly publicly declaring that they named their DEX "Trader Joe" after Plaintiff's grocery stores, then this would serve to clarify that consumers might perceive the supermarket as an inspiration rather than intentionally causing confusion. Moreover, as shown and discussed, *supra*, Defendants employ numerous signals to their customers that Plaintiff has nothing to do with their business, *e.g.*, different services; different font type; different font color; a character that Plaintiff does not use; numerous steps to use Defendants' DEX; etc. *Accord Dfinity Found.*, 2022 WL 16857036, at *11 (bad faith implausible given, *inter alia*, the defendant's use of a "dissimilar" mark).

### e.    Plaintiff Fails to Allege Plausible Actual Confusion

"[T]he Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) (citation omitted).

Plaintiff cites two purported Reddit inquiries concerning the alleged association between Plaintiff and Defendants, wherein a user promptly clarified that Defendants are "not affiliated with the grocery chain in any way." FAC ¶ 64; *id*. at ¶ 27. Even in the absence of this clarification, this does not constitute evidence of

1   actual confusion. Indeed, such inquiries show a *lack* of confusion between the

2   products such as to inspire the inquiry itself. *Accord Aurora World, Inc. v. Ty Inc.*,

3   719 F. Supp. 2d 1115, 1160-61 (C.D. Cal. 2009) (citing *Fisher Stoves, Inc. v. All*

4   *Nighter Stove Works,* 626 F.2d 193, 195 (1st Cir. 1980) (questions about affiliations

5   of two companies indicate that customers were aware of different product sources)).

6        Plaintiff also alleges that its executives allegedly "have received solicitations

7   pertaining to cryptocurrency offerings and tools" (FAC ¶ 65; *id*. at ¶ 27) and "[e]ven

8   news sources have falsely attributed the 'Trader Joe' cryptocurrency platform to

9   Trader Joe's" (*id*. at ¶ 66; *id*. at ¶ 27). Plaintiff's allegations miss the mark. The

10  relevant customer base in this forward-confusion case is Defendants' customer base,

11  not Plaintiff's executives or members of the media. Even if Plaintiff's allegations of

12  instances of actual confusion spoke to the relevant customer base, they do not

13  concern allegedly "mistaken purchasing decisions," which is what trademark law

14  protects against—"not against confusion generally." *Bosley Med. Inst., Inc.*, 403 F.3d

15  at 677. And even if Plaintiff alleged that Defendants' customers had allegedly made

16  mistaken purchasing decisions, the handful of instances that Plaintiff mentions in the

17  FAC are inconsequential and *de minimis*. *Nutri/System, Inc. v. Con-Stan Industries,*

18  *Inc.*, 809 F.2d 601, 607 (9th Cir. 1987) (finding actual confusion was *de minimis* as

19  "the instances of confusion, at best, were thin, and at worst, were trivial).

20       In short, Plaintiff does not allege that a single instance of actual purchasing

21  confusion has occurred amongst Defendants' customers. This glaring omission is not

22  surprising. In addition to the myriad differences between the parties' goods and

23  services, marketing channels, and marks, Plaintiff has coexisted—*since 1998*—with a

24  third party that operates the website "TraderJoe.com," which provides information

25  about "stock market trading for the Average Joe." *See* Gaitan Decl. at ¶ 13, Ex. K;

26  RJN, Ex. K. Plaintiff's apparent peaceful co-existence with an entity named "Trader

27  Joe" that operates in the financial-services space demonstrates that consumers can

28  navigate between Plaintiff's "Trader Joe's" grocery stores, on the one hand, and

"Trader Joe" financial services or services related thereto, on the other hand, without any actual or likelihood of confusion occurring[7].

Based on the foregoing the fourth *Sleekcraft* factor—like the second, third, fifth, sixth, seventh. and eighth factors—favors Defendants.  Accordingly, this Court should dismiss Plaintiff's First, Fourth, and Fifth Causes of Action in the FAC.

## B.  Plaintiff Fails to State a Plausible Cybersquatting Claim

Plaintiff's Third Cause of Action in the FAC seeks relief for alleged cybersquatting under ACPA.  *See* FAC ¶¶ 98-109.  For Plaintiff to state an ACPA claim, it must plead facts that are sufficient to render it plausible that, *inter alia*, Defendants registered the domain names <traderjoexyx.com>, <trader-joes.site>, and <trader-joe.website> with "a bad faith intent to profit from" Plaintiff's TRADER JOE'S marks.  *See* 15 U.S.C. § 1125(d)(1)(A)(i).

Here, the gravamen of Plaintiff's ACPA claim is that the subject domain names allegedly are "confusingly similar" to and "dilutive" of Plaintiff's TRADER JOE'S marks and that Defendants allegedly registered the domains to "capitalize" on Plaintiff's alleged goodwill.  *See* FAC ¶¶ 98-109. In other words, Plaintiff relies on the same allegations and theories to support its ACPA claim—*i.e.*, likelihood of confusion and alleged bad faith—that it does to support its trademark infringement and unfair competition claims.

Plaintiff's attempt to recast its claims for trademark infringement and unfair competition as an ACPA claim is not proper and warrants dismissal of the latter. Indeed, the "quintessential harm under the ACPA occurs when a person other than the trademark holder registers the domain name of a well-known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark

---

[7] Plaintiff attempts to distract from its peaceful co-existence by alleging that it only "recently became aware" of the third-party website "Traderjoe.com" and instituted a proceeding before WIPO to attempt to obtain ownership of that domain name.  FAC ¶ 51.  Even accepting that allegation as true, it does not erase the lengthy history of peaceful coexistence between the parties.

holder to the domain name holder." *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com*, No. CV 10-03738 AB (CWx), 2015 WL 5311085, at *24 (C.D. Cal. Sept. 10, 2015) (citation omitted) (collecting cases). Here, Plaintiff does not allege that Defendants attempted to sell any of the disputed domains to Plaintiffs. And Plaintiff understandably does not allege that Defendants are using any of the domains to divert customers from Plaintiff to Defendants given that the parties sell "totally unrelated" goods and services.

At bottom, "the allegations in the [FAC] regarding the defendants' use of the domain name[s] simply show another aspect of the alleged trademark infringement, rather than an attempt to profit specifically from 'squatting' on the domain name[s] with bad faith." *Kaplan, Inc., v. Yun*, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014). As such, "[t]hese allegations do not suggest that defendants 'perpetrated the core activities that threaten to result in the paradigmatic harm that the ACPA was enacted to eradicate,' that is, 'the proliferation of cybersquatting—the Internet version of a 'land grab.'" *Id.* (citation omitted). Accordingly, this Court should dismiss Plaintiff's ACPA claim in the FAC's Third Cause of Action.

### C. Plaintiff Fails to State a Plausible Trademark-Dilution Claim

Plaintiff's Second Cause of Action in the FAC seeks relief for alleged trademark dilution under § 43(c) of the Lanham Act. *See* FAC at pgs. 28-9. For Plaintiff to state a § 43(c) claim, it must plead facts that are sufficient to render it plausible that: (i) Plaintiff's TRADER JOE'S "mark is famous and distinctive"; (ii) Defendants began using their TRADER JOE mark and imagery in commerce "after [Plaintiff's TRADER JOE'S mark allegedly] became famous"; and (iii) Defendants' use of their TRADER JOE mark and imagery ""is likely to cause dilution by blurring or . . . tarnishment." *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Meyer Inc.*, No. CV 20-4822-PLA, 2020 WL 6875178, at *8 (C.D. Cal. Oct. 23, 2020) (citation omitted).

### 1.    Plaintiff Fails to Plausibly Allege Fame

The "requirement that a mark be famous is designed to 'carefully [limit] the class of trademarks eligible for dilution protection.'" *Deus ex Machina Motorcycles Pty. Ltd.*, 2020 WL 6875178, at *8 (alteration in original) (citation omitted).  Indeed, "dilution protection [extends] only to those whose mark is a 'household name'" (*id.*) or, as Congress put it: only those marks that are "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2).  Examples of "truly famous" marks include: "Budweiser beer, Camel cigarettes, and Barbie dolls . . . . [and] Coca-Cola."  *Dahon N. Am., Inc. v. Hon*, No. 2:11-cv-05835-ODW (JCGx), 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012).

Congress has enumerated four factors that guide courts in their fame assessment, namely:

> (i) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties[;] (ii) [t]he amount, volume, and geographic extent of sales of goods or services offered under the mark[;] (iii) [t]he extent of actual recognition of the mark[;] and] (iv) [w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register."

15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

Plaintiff alleges in gratuitous fashion throughout the FAC that its TRADER JOE'S marks allegedly are "famous" (*see, e.g.*, FAC ¶¶ 11, 46, 90) and its "TRADER JOE'S Family of Marks have come to symbolize extraordinary goodwill and have achieved great fame both within and outside the United States" (*id.* at ¶ 47).  While Plaintiff's federal trademark registrations satisfy the fourth fame factor, Plaintiff fails to support these *ipse dixit*, conclusory allegations of fame with sufficient factual allegations to satisfy the first, second, and third fame factors, respectively.

Regarding the first fame factor—*i.e.*, the duration, extent, and geographic reach of advertising and publicity of the mark— Plaintiff is hoisted by its own petard: Plaintiff admittedly relies on "word of mouth" (FAC ¶ 41) advertising from its

1  customers instead of engaging in the "extensive marketing and advertising
2  campaigns" run by the owners of "branded food products" (*id*.) and famous marks.

3      Plaintiff also alleges that it has been in business since 1967; distributes a flyer
4  in its stores and to "700,000 customers throughout the United States"; and "advertises
5  on its podcast, various social media platforms, and its website," which allegedly
6  receives approximately 3.5 million visitors each month." FAC ¶¶ 38-40. While
7  these factual allegations may speak to the alleged success—or "popularity," as
8  Plaintiff alleges (*id*. at ¶ 4)—of Plaintiff's TRADER JOE'S brand, plausibly alleging
9  success and popularity is not a surrogate for plausibly alleging fame, *i.e.*, "that the
10 general public of the United States is familiar with" Plaintiff's TRADER JOE'S
11 brand. *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, No. 2:17-cv-08222-ODW-KS, 2018
12 WL 2448123, at *6 (C.D. Cal. May 30, 2018). For example, in *MGA Enter., Inc.*, the
13 plaintiff alleged that it "ha[d] been selling the Cozy Coupe since 1979; that more than
14 10 million Cozy Coupe vehicles have been sold worldwide to date; that it has spent
15 millions of dollars to develop, build, and promote the Cozy Coupe; and that the Cozy
16 Coupe is the primary representational symbol and mark for Little Tikes." *Id*. The
17 Court held that, "[a]lthough these facts demonstrate the success and popularity of the
18 Cozy Coupe product, MGA's allegations fall short of the high standard required for a
19 dilution claim," which requires allegations that are sufficient to render it plausible
20 that the plaintiff's mark "is []comparable to that of other household names, such as
21 Budweiser beer." *Id*.; *see also Longo v. Longo*, No. 8:20-CV-00829-AB-RAO, 2020
22 WL 7774925, at *8 (C.D. Cal. Nov. 12, 2020) (while the plaintiff plausibly alleged its
23 business was a "success," such allegations "f[e]ll short of the high standard required
24 of a dilution claim").

25      Regarding the second fame factor—*i.e.*, the amount, volume, and geographic
26 extent of sales of goods or services offered under the mark—Plaintiff alleges that it
27 has 540 stores in 42 states and the District of Columbia, *i.e.*, Plaintiff admittedly has
28 no physical presence in approximately 20% of the States in the United States. FAC

¶ 42.  Notably, Plaintiff offers no allegations—factual or otherwise—concerning the amount or volume of sales under its TRADER JOE'S marks.  *See Deus ex Machina Motorcycles Pty. Ltd.*, 2020 WL 6875178, at *9 (where, as here, the plaintiff failed to allege how much product it sold under its marks "in any given fiscal year [or] what its annual sales revenue is").

Regarding the third fame factor—*i.e.*, the extent of actual recognition of the mark—Plaintiff alleges that a "2023 national survey of adult U.S. consumers undertaken before this suit was commenced found brand recognition of the TRADER JOE'S word mark by over ninety percent of respondents."  FAC ¶ 48.  Plaintiff's allegation misses the mark.  Per the plain text of § 43(c), Plaintiff must plausibly allege that Defendants began using their challenged TRADER JOE mark and trade name "at any time *after* the owner's mark has become famous […].  15 U.S.C. § 1125(d)(1) (emphasis added).

Plaintiff alleges in the FAC that Defendants began using "the TRADER JOE[] word mark, and the confusingly similar 'Trader Joe' name, in 2021 […]."  FAC ¶ 97.  In other words, Plaintiff alleges that Defendants began using their TRADER JOE mark and trade name two years *before* Plaintiff's alleged 2023 fame survey—not *after*, as required by § 43(c).  Accordingly, Plaintiff's alleged 2023 survey is untimely and irrelevant as to whether Plaintiff plausibly alleges that its marks were famous before Defendants began using their challenged mark and trade name in 2021.  As discussed, *supra*, Plaintiff fails to do so.

## 2.    Plaintiff Fails to Plausibly Allege Blurring

Dilution by blurring is an "association arising from the similarity between a mark or trade  name and  a  famous mark that  impairs the  distinctiveness of  the famous mark."  15 U.S.C.  § 1125(c)(2)(B).  Plaintiff alleges in conclusory fashion: "Defendants' use of the 'Trader Joe' name in connection with their Platform also impairs the distinctiveness of the TRADER JOE'S Family of Marks and thereby causes dilution by blurring."  FAC ¶¶ 60, 94.   This is not plausible.

As the nation's leading trademark scholar, Thomas McCarthy, explains in his oft-cited treatise, the interplay between "association" and "impairs the distinctiveness" under § 43(c) is: "'association' means that the accused mark calls to mind the famous mark. But proof of 'association' is not also proof of a likelihood of impairment of the distinctiveness of the famous mark. The likelihood of 'impairment' must be separately proven. 4 MCCARTHY, *supra*, § 24:118.

To determine whether an alleged association between the parties' marks is likely to impair the distinctiveness of the allegedly famous mark, Congress has provided courts with six factors that largely mimic the *Sleekcraft* factors, namely: "(i) [t]he degree of similarity between the mark or trade name and the famous mark [;] (ii) [t]he degree of inherent or acquired distinctiveness of the famous mark [;] (iii) [t]he extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark [;] (iv) [t]he degree of recognition of the famous mark [;] (v) [w]hether the user of the mark or trade name intended to create an association with the famous mark [; and] (vi) [a]ny actual association between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(2)(B)(i)-(vi).

As discussed, *supra*, for nearly three decades, Plaintiff has co-existed alongside the operator of "TraderJoe.com" for financial services.  If TraderJoe.com for financial services does not impair the distinctiveness of Plaintiff's TRADER JOE'S marks for grocery stores, then Defendants' use of "Trader Joe" for their DEX does not, either. The FAC confirms as much.  As shown and discussed, *supra*, the parties' marks creating strikingly different overall commercial impressions in the marketplace. These strikingly different overall impressions render Plaintiff's claims for trademark infringement *and* trademark dilution implausible.  *See Anhing Corp. v. Thuan Phong Co. Ltd.*, No. CV 13-05167 BRO (MANx), 2014 WL 11456533, at *14 (C.D. Cal. Oct. 24, 2014) ("'If a court has found that the conflicting marks are not similar enough to meet the likelihood of confusion test, then, by definition, they are not similar enough for dilution to be likely to occur'" (quoting 4 MCCARTHY, *supra*,

§ 24:72)).  These strikingly different overall impressions, combined with Defendants' offering of a DEX that is totally unrelated to Plaintiff's grocery stores, also render it implausible that Defendants intended to create an association with grocery stores offered under Plaintiff's TRADER JOE'S mark.  Regarding the other dilution-by-blurring factors, the FAC offers only irrelevant allegations of recognition based on the untimely alleged 2023 survey, and does not allege there is any actual association between the parties' marks.

In short, Plaintiff fails to support its conclusory allegation of dilution by blurring with sufficient factual allegations.  *See Glob. Aopgee v. Sugarfina, Inc.*, No. CV 18-5162-RSWL-E, 2018 WL 4945305, at *4 (C.D. Cal. Oct. 10, 2018) ("Plaintiff does not allege any facts to support a plausible claim that Defendant's use of the mark is likely to cause dilution by blurring or tarnishment. Plaintiff only alleges, 'Defendants' use of the CANDYGRAM trademark, as Candygram, dilutes and/or is likely to dilute the distinctive quality of that trademark and to lessen the capacity of the CANDY-GRAM trademark to identify and distinguish Global Apogee's goods.'" (citation omitted)).

### 3. Plaintiff Fails to Plausibly Allege Tarnishment

Dilution by tarnishment is an "association arising from the similarity between a mark or trade  name and  a  famous mark that  harms  the  reputation  of  the famous mark." 15 U.S.C. § 1125(c)(2)(C).  The classic tarnishment scenario is "'when the plaintiff's trademark is linked to products of shoddy quality,' diminishing the value of the mark 'because the public will associate the lack of quality … with the plaintiff's unrelated goods.'" *Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 609 (9th Cir. 2000) (alteration in original) (quoting *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)).

Plaintiff alleges "Defendants' use of the 'Trader Joe' name, coupled with their unscrupulous and unlawful activities, creates an association between Trader Joe's and unsavory conduct, low quality goods, and general disrepute" and, therefore, "erodes

1    the public's positive association with these marks, thereby tarnishing the TRADER
2    JOE'S Family of Marks."  FAC ¶¶ 78-9.

3        In an attempt to support these conclusory allegations with factual ones,
4    Plaintiff alleges that Defendant posted advertisements for their DEX in Paris, France
5    and registering their businesses "offshore."  FAC ¶¶ 16-17.  Tellingly, Plaintiff does
6    not allege any facts to support the notion that posting advertisements constitutes
7    "lawlessness" or "vandalism" or that there is anything illegal about registering
8    companies "offshore."  Nor does Plaintiff plead any facts to support the notion that
9    consumers in the United States would think less of Plaintiff's allegedly reputable
10   TRADER JOE'S brand of tangible grocery stores because Defendants allegedly
11   posted advertisements for an unrelated, intangible DEX outside of the United States
12   and registered their businesses outside of the United States.   Plaintiff's dilution-by-
13   tarnishment also is contradicted by its own history of being associated with crime at
14   its stores[8].

15       Plaintiff also seemingly suggests that an alleged 2023 security breach of
16   Defendants' DEX involving third-party bad actors "threatens [the alleged] vital
17   consumer confidence" in Plaintiff's TRADER JOE'S brand, "such as the security of
18   credit card transactions."  FAC ¶ 15.  Yet Plaintiff conveniently fails to mention that
19   Defendants compensated victims of this security breach, thereby restoring the strong
20   public image of their brand.[9]   And, once more, Plaintiff's dilution-by-tarnishment
21   theory is contracted by its own history; this time, its association with security
22   issues—*e.g.*, subjecting its customers to potential identity theft by printing too many
23   digits on their credit-card receipts—and shoddy, recalled products.[10] *See Keim v.*

24   _____

25   [8] *See* Gaitan Decl. at ¶ 15, Ex. M; RJN, M
     (https://www.foxbusiness.com/lifestyle/bay-area-police-warn-trader-joes-shoppers-
26   new-crime-trend) (last visited Feb. 16, 2024)
     [9] *See* Gaitan Decl. at ¶ 14, Ex. L; RJN, L (https://www.cryptopolitan.com/trader-joe-
27   exchange-responds-security-breach/) (last visited Feb. 16, 2024).
     [10] *See* Gaitan Decl. at ¶ 3, Ex. A; RJN, A
28   (https://www.traderjoes.com/home/announcements?category=recalls&id=13463486
     28 and https://www.traderjoes.com/home/announcements/food-safety-overview)
     (last visited Feb. 16, 2024).

1   *Trader Joe's Company,* No. 9:19-cv-81025-RLR, Dkt. 1 (S.D. Fla. July. 17, 2019).

2       Based on the foregoing, this Court should dismiss Plaintiff's § 43(c) dilution

3   claim in the FAC's Second Cause of Action.

4       **D.     Plaintiff Fails to State a Timely or Plausible Conversion Claim**

5       In the FAC's Sixth Cause of Action, Plaintiff asserts a claim for conversion

6   under California law. *See* FAC at pgs. 35-37. The relevant subject of Plaintiff's

7   conversion claim is the domain name <traderjoexyz.com>. *See id*. Domain names

8   are intangible property. *See generally Kremer v. Cohen*, 325 F.3d 1035 (9th Cir.

9   2003). Under CAL. CODE CIV. P. § 339(1), a conversion claim based on intangible

10  property—including a domain name—is subject to a two-year statute of

11  limitations. *See OC Kickboxing & Mixed Martial Arts v. Warrior Arts All., Inc.*, No.

12  SA CV 19-0004-DOC (DFMx), 2019 WL 3210093, at *3-4 (C.D. Cal. May 3, 2019).

13      Plaintiff commenced this lawsuit on October 5, 2023. Yet Plaintiff admits in

14  the FAC that it was aware of Defendants' use of the domain name

15  <traderjoexyz.com> at least two years earlier, *i.e.*, September 8, 2021. *Id*. at ¶ 71.

16  Accordingly, this Court should dismiss Plaintiff's conversion claim on the ground

17  that it is time-barred under § 339(1). *Accord OC Kickboxing & Mixed Martial Arts*,

18  2019 WL 3210093, at *3-4.

19      Plaintiff, ostensibly recognizing that its conversion claim is untimely, alleges in

20  the FAC that its two-year limitations period was tolled: (i) "during the pendency" of

21  its unsuccessful WIPO proceeding to recover the domain name <traderjoexyx.com>,

22  which Plaintiff commenced on May 4, 2022 and (ii) because of Defendants' alleged

23  "fraudulent concealment of the true origin of the 'Trader Joe' name for their platform,

24  which, once uncovered, laid bare the wrongfulness of Defendants' use of the

25  traderjoexyz.com domain name." FAC ¶ 133. Both arguments fail. Regarding the

26  former, Plaintiff ignores that it could have sued in federal court to recover the domain

27  name in an *in rem* proceeding under 15 U.S.C. § 1125(d)(2) instead of, or in addition

28  to, seeking to recover the domain name before WIPO. Given the availability of an *in*

*rem* proceeding, Plaintiff should not get credit for time served before WIPO. Regarding the latter, it is a red herring. Plaintiff did not need to know the allegedly "true origin of the 'Trader Joe' name for" Defendants' DEX to seek to recover the *domain name* <traderjoexyz.com>. All Plaintiff needed to know was the domain name existed, which Plaintiff admittedly knew as early as September 8, 2021. Once Plaintiff possessed this knowledge, it could have sued in federal court under ACPA; instead, though, Plaintiff instituted its unsuccessful WIPO Proceeding. Pursuing the <traderjoexyz.com> domain name before WIPO instead of in federal court during its two-period to do so was a risk that Plaintiff assumed—and this Court should not give Plaintiff a second, untimely attempt to recover the domain name just because Plaintiff gambled and lost before WIPO.

But even if Plaintiff's conversion claim was timely based on Plaintiff's tolling allegations, this Court still should dismiss it at the pleading stage because it is implausible. "In California, three elements comprise a cause of action for conversion. First, the plaintiff owned, possessed, or had the right to possess an item of personal property. Second, the defendant intentionally took wrongful possession of, disposed of, and/or prevented the plaintiff from having access to the property for a significant period of time. Third, the plaintiff was harmed by the defendant's actions." *Gizmo Beverages, Inc. v. Park*, No. 8:17-cv-01037-JDE, 2019 WL 141461, at *9 (C.D. Cal. Jan. 9, 2019) (citation omitted).

Here, Plaintiff does not allege that it has ever owned or possessed the domain name <traderjoexyz.com>. Assuming *arguendo* that Plaintiff had the right to possess the domain name at the time Defendants registered it, Plaintiff fails to plausibly allege the second element of its conversion claim.

Plaintiff alleges in conclusory fashion that Defendants allegedly "substantially interfered with Trader Joe's property right in the traderjoexyz.com domain name by [i] knowingly and intentionally taking possession of the domain name, including by registering, using, and maintaining the registration for the tradejoexyz.com domain

name to the exclusion of Trader Joe's [and ii] knowingly and intentionally refusing to return to the domain name to Trader Joe's Joe's . . . ." FAC ¶¶ 123-24.  As shown in the above-quoted allegations, Plaintiff does not allege that Defendants "disposed of" the domain name <traderjoexyz.com> or have prevented Plaintiff from accessing the domain name "for a significant period time."   The above-quoted allegations also fail to render it plausible that Defendants allegedly "intentionally took wrongful possession of" the domain name <traderjoexyz.com> when Defendants registered it.  As Plaintiff must concede, there is nothing wrongful about registering a domain name; they are freely available for sale on the Internet by numerous brokers.  As discussed, *supra*, Plaintiff also fails to plausibly allege that Defendants' registration, use, and/or maintenance of the disputed domain name was or is wrongful in the vein of trademark infringement, cybersquatting, dilution, or unfair competition.

Plaintiff's conversion claim is even more implausible given that Plaintiff has co-existed alongside the domain name <traderjoe.com> since at least 1998. *See* Gaitan Decl. at ¶ 13, Ex. K; RJN, Ex. K.  If registering, using, and maintaining the domain name <traderjoe.com> for financial services that are unrelated to Plaintiff's grocery stores is and was not wrongful, then it follows that there is/was nothing wrongful about Defendants' registration, use, and maintenance of the domain name <traderjoexyz.com> for its DEX, which likewise is totally unrelated to Plaintiff's grocery stores.

Based on the foregoing, this Court should dismiss Plaintiff's conversion claim in the FAC's Sixth Cause of Action.

## V.   CONCLUSION

For the reasons set forth herein, Defendants request that this Court: (i) dismiss the entirety of Plaintiff's FAC with prejudice pursuant to FED. R. CIV. P. 12(b)(6) and (ii) award to Defendants any further relief that this Court deems just and equitable.

1

2    DATED:  February 16, 2024      Respectfully submitted,

3                                    KILPATRICK TOWNSEND & STOCKTON LLP

4

5                                    By: */s/Jonathan W. Thomas*
                                     JONATHAN W. THOMAS (*pro hac vice*)
6                                    DANIEL E. GAITAN

7                                    *Attorneys for Defendants*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28